Anthony J. ROWE, Plaintiff,

v.

Lt. Chuck CARSON, et al., Defendants.

No. 4:CV95–3033.

United States District Court,
D. Nebraska.

Jan. 12, 1996.

Beverly Evans Grenier from the Scudder Law Firm, Lincoln, Nebraska, for plaintiff.

Richard L. Boucher and Kimberly K. Sturzenegger from the Boucher Law Firm, Lincoln, Nebraska, for defendants.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

URBOM, Senior District Judge.

This case came before me on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). The defendant, Michael Carlson, the plaintiff's probation officer, has moved for summary judgment on the grounds that he is absolutely, or in the alternative qualifiedly, immune to suit, as a matter of law. He also argues that the plaintiff is barred from relitigating his constitutional claim by the doctrine of collateral estoppel. Upon review, I conclude that the defendant is entitled to qualified immunity and I shall grant the defendant's motion for summary judgment.

## I. FACTS

The plaintiff, Anthony J. Rowe, was placed on probation by the State of Nebraska on August 30, 1994, for the offenses of Minor in Possession, Second Offense, False Reporting to a Police Officer, and Contempt for Failure to Appear. (Def.'s Br. in Supp. of Mot. for S.J. at 2) [hereinafter Def.'s Br. at __]. As two conditions of his probation, Rowe was required to abstain from all use of alcoholic beverages and, not use or possess any controlled substance except by prescription, and submit to searches of himself and property for controlled substances or contraband, at any time, by any law enforcement or probation officer. (Ex. D, Filing 59.) He was assigned to the defendant's caseload as a probationer.

On November 28, 1994, Rowe was arrested in South Sioux City, Nebraska, for violation of probation he was serving for burglary in the State of Iowa. A search of Rowe's person at the Dakota County Jail turned up a quantity of drugs. At that time a set of keys was also found and placed in storage. Present at the search was the plaintiff's probation

officer, Mike Carlson. Carlson asked for Rowe's consent to search his house. Rowe refused his consent.

Defendant Carlson produced the Nebraska county court's probation order, directing the plaintiff's attention to the conditions concerning drugs and searches, as well as the fact that Rowe had signed the document, indicating his voluntary consent to the conditions. Rowe denied that the signature was genuine. Carlson requested the plaintiff's keys from a Dakota County jail employee who, over Rowe's objections, gave them to him. Carlson proceeded to search the plaintiff's house some time thereafter. It is this search of plaintiff's home that forms the basis of his Fourth Amendment claim. He alleges that it was an illegal search by Carlson.

## II. STANDARD OF REVIEW

A motion for summary judgment shall be granted when, viewing the facts and reasonable inferences arising therefrom in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir.1983). A genuine issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," and "must present affirmative evidence in order to defeat a properly sup-ported motion for summary judgment." *Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514–15 (citations omitted).

## III. LEGAL DISCUSSION

The defendant contends that he is not subject to suit for the alleged illegal search of the plaintiff's home because he has absolute immunity as a probation officer or, in the alternative, he has qualified immunity because he is a public official. (Def.'s Br. in Supp. of Mot. for S.J. at 7, 11) [hereinafter Def.'s Br. at ___]. He also argues that the plaintiff is collaterally estopped from raising his Fourth Amendment claim because it was raised in his state court proceedings. (Def.'s Br. at 19–23.) The plaintiff responds that the defendant is not entitled to assert either form of immunity, (Pl.'s Br. in Opp'n to Mot. for S.J. at 5–10) [hereinafter Pl.'s Br. at ___], and collateral estoppel does not apply. (*Id.* at 10.) Because I find that Carlson is entitled to qualified immunity against the plaintiff's claim, I need not consider Rowe's other contentions.

### A. Absolute Immunity

Absolute immunity is recognized to exist for, among others, legislators, prosecutors, and judges. It protects public officials from personal liability for even clearly erroneous or malicious behavior, when they carry out functions within the scope of the above three areas. It is, like qualified immunity, an immunity to suit and not merely a defense to liability. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). While care has been taken to restrict expansion of the doctrine, it does extend to public officials who act in a manner intimately connected with one of the functions listed above. For example, with respect to probation officers, the preparation and submission of presentence reports has been found to be integral to the sentencing process and as a result absolute immunity has been found to exist in completing this task. *See, e.g., Dorman v. Higgins,* 821 F.2d 133 (2d Cir.1987).

However, I have not found any case which has held that absolute immunity exists for a probation officer who conducts a search of a probationer's home. Nor do I find that absolute immunity should extend to such a

situation. It seems to me that searching Rowe's home to determine how extensive was his violation of probation conditions is an investigatory act, and one akin to the role police officers play in investigating crimes pursuant to search warrants. In that role, police officers are only afforded qualified immunity for their actions. *See Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Therefore, I do not find that a probation officer who is behaving in an investigative duty is entitled to absolute immunity under these circumstances.

### B. Qualified Immunity

■ Qualified immunity is an affirmative defense, *Mahers v. Harper,* 12 F.3d 783, 785 (8th Cir.1993), which public officials may assert to shield themselves from civil damages arising from a lawsuit in which it is alleged that their actions resulted in the violation of a plaintiff's constitutional rights. Qualified immunity, rather than its absolute immunity counterpart, is considered the norm for public officials, *Anderson v. Creighton,* 483 U.S. at 642, 107 S.Ct. at 3040, because it affords them ample protection to accomplish their duties, without acting as a complete bar to recovery for persons who allegedly have had their constitutional rights violated. *Harlow v. Fitzgerald,* 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982). Whether a public official is entitled to qualified immunity in a particular situation involves a three-question enquiry. *Foulks v. Cole County,* 991 F.2d 454, 456 (8th Cir.1993) (citing *Cross v. City of Des Moines,* 965 F.2d 629, 631–32 (8th Cir.1992)).

First, has the plaintiff asserted a violation of a federal law or constitutional right? In this case, the plaintiff has alleged that the defendant conducted an illegal search of his home in violation of the Fourth Amendment. He contends that the search was conducted without a warrant and not pursuant to any recognized exception. (Third Am.Compl. at ¶ 11.) This allegation sufficiently asserts a constitutional violation.

■ The second question asks whether the right asserted by the plaintiff was clearly established at the time of the alleged violation. In order to determine whether a right

is clearly established, it is not necessary that the Supreme Court has directly ruled on the issue, nor does the challenged action need to have been held to be unlawful. *Norfleet v. Arkansas Dep't of Human Servs.,* 989 F.2d 289, 291 (8th Cir.1993) (citations omitted). However, some factual correspondence with precedent must exist. *Lappe v. Loeffelholz,* 815 F.2d 1173, 1177 (8th Cir.1987).

There is no doubt that Rowe's Fourth Amendment right to be free of unreasonable searches was clearly established in November 1994. That the plaintiff's Fourth Amendment right may have been established in a generalized way, however, is insufficient for purposes of qualified immunity. Instead, the enquiry is whether the plaintiff's constitutional right was clearly established in the more particularized circumstances of this case, so that in light of pre-existing law the unlawfulness of the defendant's actions was apparent. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. Thus, I must ask whether it was clearly established that Carlson's warrantless search of Rowe's home violated the Fourth Amendment, when it was conducted in reliance on a facially valid court probation order, containing a provision that Rowe submit to a search of his person or property at any time, by any probation or law enforcement officer, for the purpose of discovering controlled substances or contraband? I find that the plaintiff's right was not clearly established at the time of the alleged violation in light of the Supreme Court's holding in *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).

The plaintiff's court order of probation contained Condition Fourteen, which states that "[t]he above named defendant shall submit to a search of his person or property at any time, by any Probation Officer or law enforcement officer, with or without probable cause, for controlled substances or contraband." *See* (Ex. D, filing 59.). When using probation, a court is directed by Nebraska law to "attach such reasonable conditions as it deems necessary or likely to insure that the offender will lead a law-abiding life." Neb.Rev.Stat. § 29–2262(1) (1995 Supp.). The statute does not list warrantless searches among the acceptable conditions

that are enumerated under subsection (2), but as (r) indicates, an offender may be required "[t]o satisfy any other conditions reasonably related to [his] rehabilitation...." Neb.Rev.Stat. § 29–2262(2)(r) (1995 Supp.). Submission to warrantless searches has been recognized by both the United States and Nebraska supreme courts as a condition which is reasonably related to an offender's rehabilitation.

In *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), the Supreme Court reviewed warrantless searches as part of state probation requirements.[1] Pursuant to a state regulation, probationers were subject to a search of their homes without a warrant by any probation officer, if there were reasonable grounds to believe that contraband was present, and the officer received his supervisor's approval. *Id.* at 870–71, 107 S.Ct. at 3167. Probation officers received a tip from local police that Griffin, a probationer, may have had a gun in his home, which would have been a violation of his probation. A search was conducted and a gun found. Griffin was convicted of a felony. After failing in his state appeals, he was granted review by the Supreme Court.

The Supreme Court concluded that the search "satisfied the demands of the Fourth Amendment, because it was carried out pursuant to a regulation that itself satisfie[d] the Fourth Amendment's reasonableness requirement." *Id.* at 873, 107 S.Ct. at 3168. The Court noted that a probationer's home is protected, like anyone else's, under the Fourth Amendment, requiring that a search of it be reasonable. However, the Court commented that it had permitted exceptions to the Fourth Amendment's warrant and probable cause requirement where "special needs," made it impracticable, and it was reasonable to do so. *Id.* at 873, 107 S.Ct. at 3168 (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 351, 105 S.Ct. 733, 748, 83 L.Ed.2d 720 (1985)). It then analogized the operation of the state's probation system to operation of its schools, government offices, or prisons, each having its own special needs, and noting that special needs likewise arise in the probation context as well.

The Court found in the context of the Wisconsin probation system (and logically, in any probation system) the special need that existed was the supervision of the probationer to ensure his compliance with the goals of probation—genuine rehabilitation of the probationer, and protection of the community from harm that might result from his being at large. *Griffin*, 483 U.S. at 875, 107 S.Ct. at 3169. The Court noted that the individual who is placed on probation has received a criminal sanction, and even though it is not incarceration, the probationer does not enjoy the "'absolute liberty'" of a free citizen, "'but ... only conditional liberty properly dependent on observance of special [probation] conditions.'" *Id.* at 874, 107 S.Ct. at 3168 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)).

The Court concluded that the probable cause and warrant requirement could be dispensed with in the probation context, because the special need justified doing so. The Court reasoned that placing a magistrate in the position of the probation officer would interfere to an "appreciable degree" with the operation of the probation system. *Griffin*, 483 U.S. at 876, 107 S.Ct. at 3169. Moreover, requiring a search warrant would create delay and mean that probation officers could not "respond quickly to evidence of misconduct." *Id.* (citing *New Jersey v. T.L.O.*, 469 U.S. at 340, 105 S.Ct. at 742). Delay, the Court said, would result in reduced deterrent effect that immediate searches create. *Id.* (citations omitted).

The Nebraska Supreme Court has also faced the issue of warrantless searches in the probation context. It held that "conditions in probation orders requiring the probationer to submit to warrantless searches, to the extent that they contribute to the rehabilitation process and are done in a reasonable manner, are valid and constitutional." *State v. Mor-*

---

1. In *Griffin* the Court did not discuss the qualified immunity of probation officers conducting the search. However, it had concluded in *Anderson,* a case decided earlier in the Court's term, that law enforcement officers who conduct warrantless fugitive searches of third parties' homes are entitled to qualified immunity.

*gan,* 206 Neb. 818, 826–27, 295 N.W.2d 285 (1980); *see also State v. Lingle,* 209 Neb. 492, 308 N.W.2d 531 (1981). The court did not discuss the qualified immunity of the probation officer conducting the search, but did discuss why warrantless search terms in court probation orders are acceptable. It noted that probation is a form of punishment and a court may impose those conditions on the offender that aid his rehabilitation. *Morgan,* 206 Neb. at 824, 295 N.W.2d 285. Furthermore, the probationer's expectation of privacy is reduced, permitting governmental intrusion in pursuit of legitimate goals, such as supervision for the purpose of rehabilitation. *Id.*

I cannot conclude from the state of existing law that the plaintiff, as a probationer, had a clearly established right to be free of warrantless searches. Both the United States and Nebraska State supreme courts had ruled that a probationer held diminished expectations of privacy by virtue of his status as a criminal and the special need for supervision associated with probation as a period of rehabilitation. This goal justified an exception to the Fourth Amendment's probable cause and warrant requirement in this context. Therefore, I do not find that the plaintiff had a clearly established constitutional right to be free of warrantless searches. Furthermore, I find that even if the plaintiff's right was clearly established, under the third step of the qualified immunity enquiry a reasonable probation officer would not have understood that his actions violated that right, due to the existing state of the law and the circumstances of this case.

The final step of the qualified immunity analysis asks, given facts most favorable to the plaintiff, does there exist a genuine issue of material fact as to whether a reasonable public official would not have known that his or her actions constituted a violation of that right? *Foulks v. Cole County,* 991 F.2d 454, 456 (8th Cir.1993) (citing *Cross v. City of Des Moines,* 965 F.2d 629, 631–32 (8th Cir.1992)). This is reviewed objectively, *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2739, asking in this case, whether the reasonable probation officer could have believed that Carlson's warrantless search of the plaintiff's home was lawful, in light of existing law and the information available to Carlson. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039. I cannot say that a reasonable probation officer would have known that he was violating the plaintiff's Fourth Amendment right for several reasons.

First, the probationer is not a free citizen whose Fourth Amendment rights are undiminished. *Griffin,* 483 U.S. at 874, 107 S.Ct. at 3168; *Morgan,* 206 Neb. at 824, 295 N.W.2d 285. Rather, he is an individual who has been criminally sanctioned by the state. As a result, certain conditions designed to punish and/or rehabilitate have been imposed on him. *Morgan,* 206 Neb. at 824, 295 N.W.2d 285. His actions are properly the subject of state scrutiny or supervision, in order to protect the community because he is permitted to remain at-large, as well as to ensure that the offender uses his probation as a period of "genuine rehabilitation." *Griffin,* 483 U.S. at 875, 107 S.Ct. at 3168; *Morgan,* 206 Neb. at 824, 295 N.W.2d 285. Further, there is a need to insure that he is complying with his probation and not falling by the wayside and old patterns of behavior that caused his unlawfulness in the first place. *Morgan,* 206 Neb. at 826, 295 N.W.2d 285.

It is also noteworthy that courts have traditionally held that officials who act pursuant to a facially valid court order have absolute immunity for actions taken to execute that order. *See, e.g., Rogers v. Bruntrager,* 841 F.2d 853 (8th Cir.1988) (court clerk); *Tymiak v. Omodt,* 676 F.2d 306, 308 (8th Cir. 1982) (sheriff); *Valdez v. City & County of Denver,* 878 F.2d 1285, 1290 (10th Cir.1989) (same); *Waits v. McGowan,* 516 F.2d 203, 206 & n. 6 (3d Cir.1975) (police officers). As one court noted " 'the fearless and unhesitating execution of court orders is necessary if the court's authority and ability to function are to remain uncompromised.' " *Patterson v. Von Riesen,* 999 F.2d 1235, 1240 (8th Cir.1993) (quoting *Coverdell v. Department of Social & Health Services,* 834 F.2d 758, 765 (9th Cir.1987)). Even though in this case the probation officer is seemingly not entitled to absolute immunity for his actions, *see Anderson,* 483 U.S. at 646, 107 S.Ct. at 3042,

he is entitled to rely to some degree on the validity of the court's order.[2]

Finally, the Court's opinion in *Anderson* establishes that law enforcement officers who make warrantless searches are protected by qualified immunity. *Anderson v. Creighton,* 483 U.S. at 646, 107 S.Ct. at 3042. That opinion indicated that a search may be unreasonable for purposes of the Fourth Amendment, but reasonable for purposes of qualified immunity, because a law enforcement officer may mistakenly but reasonably believe that a warrantless search is justified under the circumstances. *Id.* at 640–41, 107 S.Ct. at 3039. In these circumstances with the plaintiff's status as an individual with diminished privacy interests, who is subject to greater state supervision, and with a facially valid court order, I cannot say that a reasonable probation officer in Carlson's position would have known that he was violating Rowe's constitutional rights. Therefore, I find that the doctrine of qualified immunity does apply to Carlson's actions in conducting a warrantless search of the plaintiff's home.[3]

**IT IS ORDERED** that the defendant Carlson's motion for summary judgment, filing 58, is hereby granted.

---

**2.** This seems especially so in light of the many court decisions which grant police officers executing facially valid warrants qualified immunity. *See Whiteley v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) (holding police officer who executes arrest warrant is entitled to assume it was validly obtained); *Bennett v. City of Grand Prairie,* 883 F.2d 400, 408 (5th Cir.1989) (same); *Masters v. Crouch,* 872 F.2d 1248 (6th Cir.), *cert. denied,* 493 U.S. 977, 110 S.Ct. 503, 107 L.Ed.2d 506 (1989) (holding no clearly established law requiring police officer executing warrant to determine if judge in error); *Barr v. Abrams,* 810 F.2d 358, 362 (2d Cir.1987) (holding acts pursuant to facially valid, court-issued warrant protected by qualified immunity).

**3.** Furthermore, it extends to Carlson's use of the plaintiff's keys in facilitating the search. Although the plaintiff has alleged that the defendant obtained the keys in violation of county jail policy, not every violation of a county policy results in a constitutional violation. The keys had been confiscated from Rowe during a search at the jail incident to his booking. Carlson used them to obtain access to Rowe's home, attempting to carry out the Court's order efficiently and without damage to the plaintiff's property. As I have found that Carlson may assert qualified immunity for the search itself, he is also entitled to it for the reasonable use of the keys in effecting that search.