John STEHNO, Respondent,

v.

SPRINT SPECTRUM, L.P., Appellant,

and

Amdocs, Ltd., Defendant.

No. SC 87023.

Supreme Court of Missouri,
En Banc.

Feb. 14, 2006.

Rehearing Denied April 11, 2006.

Ann K. Covington, K. Lee Marshall, St, Louis, for appellant.

Elaine Drodge Koch, Mikah K. Story, Kansas City, for defendant.

Aaron N. Woods, Lisa C. Bower, Kansas City, for respondent.

MARY R. RUSSELL, Judge.

Sprint Spectrum, L.P., appeals a judgment granting John Stehno a new trial on his claim of tortious interference with a business expectancy. Sprint asserts that Stehno did not make a submissible case of tortious interference because he failed to prove: (1) he had a valid, reasonable business expectancy or (2) there was an absence of justification for Sprint's actions. This Court agrees and reverses the judgment.

## I.   Facts and Procedural History

As this appeal involves the sufficiency of evidence, a detailed explanation of the facts is necessary. Stehno was an employee of Modis, Inc., an information technology consulting company that provided temporary technical consultants to its clients. One of Modis's clients was Amdocs, a company specializing in developing billing software. Modis contracted to supply Amdocs with temporary consultants, including Stehno. Amdocs, in turn, contracted with Sprint to help it develop a billing system. As a result of this agreement, Amdocs assigned Stehno to work on the Sprint billing system as a database administrator (DBA). Stehno, however, remained at all times an employee of Modis. He had no contractual relationship with Amdocs or Sprint.

Before Modis hired him, Stehno worked as a temporary contract worker on other projects in Sprint's data management department. After having problems with other employees, Stehno told Jan Richert, a senior manager in the data management department, that he was leaving her department to work at Sprint Long Distance.

After his assignment at Sprint Long Distance expired, he asked his employer— another temporary employment agency— to contact Richert and see if she would be interested in him for an opening in her department. Richert responded that Stehno had not been satisfied working there before and that the environment had not changed. As such, the employment agency informed Stehno that Richert refused the offer to return to her department.

Shortly thereafter, Stehno was contacted by Modis about the possibility of working for Amdocs on the Sprint billing system project. He accepted the temporary position without informing Modis that Richert had recently rejected his offer to return to her department. A few days after Stehno began working at Sprint, Richert learned that he was working on the Sprint billing system project. She contacted his supervisors at Amdocs through a series of e-mails and telephone calls, expressing her concerns about the division of labor on the project and about Stehno specifically. Richert explained to Amdocs that Sprint was to provide the DBAs from her department and that there were four DBAs already assigned to the Sprint billing systems project. Amdocs employees were to be used as application developers and not DBAs.[1] Regarding Stehno specifically, Richert informed Amdocs that, although his skill was

---

1. Amdocs employees were to be used as application developers (commonly referred to as application database administrators or ADBAs) and not DBAs.

commensurate with the average DBA in her department, he was "high maintenance" and a "magnet for conflict" and she did not recommend him for the project. She added that because he had already been onsite for four days, the decision on whether to terminate him should be Amdocs' and not hers.

Amdocs responded in two e-mails, the first stating: "Definitely we are not going to bring somebody that [Sprint] does not recommend"; the second stating: "Today would be [sic] John's last day in our office. It's AMDOCS decision. I do not want to keep people that you are uncomfortable with." After Amdocs terminated its relationship with Stehno, Modis fired him because it had no other assignments for him.

Stehno thereafter sued Sprint and Amdocs for tortious interference with a business expectancy. After trial, the jury returned verdicts for Amdocs and Sprint. Stehno moved for a new trial, and the court granted Stehno's motion as to Sprint, finding that the verdict was against the weight of the evidence. After an opinion by the Court of Appeals, Western District, this Court granted transfer. Mo. Const. art. V, § 10. Sprint argues that the trial court erred in denying its motion for judgment as a matter of law and in granting Stehno's motion for a new trial.

## II. Standard of Review

■ The circuit court has nearly unfettered discretion in deciding whether or not to grant a new trial on the ground that the verdict was against the weight of the evidence, "[a]nd its ruling upon that ground will not be disturbed, except in case of manifest abuse." *Robinson v. Wampler*, 389 S.W.2d 757, 760 (Mo.1965). As long as the plaintiff makes a submissible case, the court's grant of a new trial will generally not be disturbed. *See id.* at 759–60. It is only where there is a com-

plete absence of probative fact to support the jury's conclusion that this Court will decide that the plaintiff did not make a submissible case. *Doe v. TCI Cablevision*, 110 S.W.3d 363, 369–70 (Mo. banc 2003).

■ A submissible case of tortious interference requires the plaintiff to adduce evidence of: (1) a valid business expectancy; (2) defendant's knowledge of the relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages. *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 316 (Mo. banc 1993). Sprint argues that Stehno did not present evidence at trial that, if believed, establish the first and fourth elements.

## III. Valid Business Expectancy

■ Sprint argues that Stehno had no valid business expectancy in his continued employment on the Sprint project through Amdocs. The valid business expectancy requirement involves more than a mere subjective expectancy—it must be a *reasonable* expectancy of continued employment. *See Bell v. May Dep't Stores Co.*, 6 S.W.3d 871, 877 (Mo. banc 1999). The plaintiff must have more than a "mere hope" of continued employment. *See Misischia v. St. John's Mercy Med. Ctr.*, 30 S.W.3d 848, 863 (Mo.App.2000).

Stehno was a temporary contractor. While he may have had a subjective hope to have long-term employment on the Sprint project, both Amdocs and Sprint retained the right to end Stehno's assignment without even consulting him.

Amdocs' agreement with Modis stated that Amdocs could terminate a service order *for any reason* with seven days' written notice. The contract further stated that Amdocs could request that a contractor be removed immediately if it was dissatisfied with the contractor. Similarly,

Sprint's agreement with Amdocs provided that Sprint retained "the right at any time to reasonably require removal of a Subcontractor and/or any of a Subcontractor's personnel ... [with] reasonable prior notice to Amdocs, specifying the reasons for such removal, with an opportunity to cure (except in cases of gross negligence or intentional misconduct) within such notice period."

■ A business expectancy that is contrary to the terms of a contract on which the expectancy depends is unreasonable.[2] *See Rhodes Eng'g Co. v. Pub. Water Supply Dist. No. 1*, 128 S.W.3d 550 (Mo.App. 2004); *Hartbarger v. Burdeau Real Estate Co.*, 741 S.W.2d 309 (Mo.App.1987).

■ Stehno argues that although he was a temporary contractor, subject to removal at any time by either Sprint or Amdocs under their respective contracts, that is not dispositive. He is correct that his business expectancy need not be based on an existing contract. *Eib v. Fed. Reserve Bank of Kansas City*, 633 S.W.2d 432, 435 (Mo.App.1982). A probable future business relationship that gives rise to a reasonable expectancy of financial benefit is enough. *Id.* at 435–36. As such, Stehno argues his employment at-will status does not preclude a valid business expectancy. His argument does have some support in a case from the court of appeals. *See, e.g., Hensen v. Truman Med. Ctr.*, 62 S.W.3d 549, 553 (Mo.App.2001).

Stehno asserts that the facts of this case are analogous to those in *Hensen.* Hensen worked directly for a company called REN. *Id.* at 551. He, like Stehno, was assigned to work for another employer— Truman Medical Center—that formerly employed him directly. *Id.* Because of some alleged misconduct during his assignment, Truman refused to allow Hensen to return to work there under any condition. *Id.* at 551–52. Hensen sued Truman for tortious interference with his business expectancy, and the court of appeals held that he made a submissible case. *Id.* at 554. Specifically, the court stated that although Truman enjoyed much latitude in terminating him when he was a Truman employee, "[w]hen Hansen assumed employment with REN—albeit [as] an at-will employee for REN—Truman became obligated not to interfere unjustifiably with any of Hensen's business expectancies in his new employment relation with REN." *Id.*

Although it is facially similar, *Hensen* differs from the present case in two notable aspects. First, Hensen was not a temporary contractor, but was assigned to work at Truman indefinitely in a specific assignment.[3] *Id.* at 551. Second, *Hensen* involved an employer that retained the right to transfer its employees to a different employment assignment. It does not, however, address the situation where the alleged *interferer* retains a contractual right to remove the employee at any time

2. Stehno makes much of the fact that the contract between Amdocs and Sprint requires Sprint to give Amdocs notice of any such removal, specifying the reasons for removal with an opportunity to cure. Stehno, however, was not a party to the contract between Amdocs and Sprint, nor was he a third party beneficiary. Thus, the notice and opportunity to cure provisions apply only to Amdocs, and Amdocs did not invoke these provisions. These provisions create nothing on which

Stehno can rely for the purpose of a business expectancy.

3. Unlike the present case, in *Hensen,* the plaintiff's direct employee—REN—took over all staffing services for the department in which he worked. *Id.* Thus, in order to keep working at Truman, Hensen had to quit his job and apply for a position with REN with the understanding that he would be placed at Truman. *Id.*

as in this case. Because of the temporary nature of Stehno's assignment and the contractual provisions allowing either Sprint or Amdocs to remove him from the project, the present case is clearly distinguishable from *Hensen.*

Lastly, Richert—the Sprint manager whose department was to provide DBAs for the billing system project—rejected an offer to have Stehno return to work for her less than one week before he began working on the project through Amdocs. It is specious that Stehno believed he had any chance of long-term employment on the project. Clearly any expectation Stehno had of continued employment on the Sprint project was not a valid, reasonable business expectation.[4]

### IV. Absence of Justification

■■■ While Stehno's failure to produce evidence of a reasonable business expectancy is dispositive of the case, he also failed to adduce substantial evidence on the element of absence of justification. The plaintiff carries the burden of affirmatively showing lack of justification. *Nazeri,* 860 S.W.2d at 316–17. If the defendant has a legitimate interest, economic or otherwise, in the expectancy the plaintiff seeks to protect, then the plaintiff must show that the defendant employed improper means in seeking to further only his

own interests. *Id.* at 317. Improper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law. *Id.*

■■■ Sprint had an economic interest in controlling who worked on its projects. So important was this interest that Sprint secured the right to reasonably remove any contractor from the project in its contract with Amdocs. "No liability arises for interfering with a . . . business expectancy if the action complained of was an act which the defendant had a definite legal right to do without any qualification." *Cmty. Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n,* 796 S.W.2d 369, 372 (Mo. banc 1990).[5] As such, Sprint had a valid economic justification for removing Stehno.

■■■ Even if there is an economic justification for interfering with a business expectancy, the interfering party must not employ improper means. *Nazeri,* 860 S.W.2d at 317. Stehno suggests that Sprint used improper means to interfere with his business expectancy in that Richert misrepresented that he was "high maintenance" and a "magnet for conflict." He admits, however, that he had conflicts when he worked at Sprint. While Richert's comments do not paint a positive

---

4. This conclusion does not mean that a temporary employee, assigned to a third-party by an employment agency or contractor, can *never* have a valid, reasonable business expectancy. There may be some factual scenarios wherein a temporary employee has been given sufficient guarantees of continued employment to give rise to a meritorious claim of tortious interference. This is not such a case.

5. Stehno argues that Sprint's legal right to remove him was qualified. It is true that Sprint only retained the right to "reasonably" remove an Amdocs contractor and that it had to provide notice and an opportunity to cure.

These qualifications, however, only applied to Amdocs. As noted earlier, Stehno was not a party to the contract between Amdocs and Sprint. He is unable, therefore, to rely on these provisions to claim that Sprint did not have a valid economic interest in controlling who worked on the project. Further, Sprint did not actually use this contract mechanism to remove him from the project—Amdocs removed him on its own accord. Given that Sprint had an economic interest in removing him from the project directly, it certainly had that same interest in achieving the result indirectly.

picture of Stehno, satisfying the absence of justification element requires a showing that the defendant interfered with the business expectancy for "personal, as opposed to corporate" interests. *Eggleston v. Phillips,* 838 S.W.2d 80, 83 (Mo.App. 1992). There is nothing in the record indicating that Richert displayed any personal animus for Stehno. Rather, she voiced her concerns about him to protect the corporate interests of her employer.

Sprint had a legitimate economic interest in choosing who worked on its projects and did not employ improper means in protecting that interest. Stehno failed to produce evidence to the contrary and does not meet his burden of showing absence of justification.

### V. Conclusion

Stehno did not produce substantial evidence that he had a valid business expectancy or that Sprint was not justified in its actions. As such, he did not make a submissible case of tortious interference with a business expectancy. The judgment is reversed and the case is remanded.

All concur.