**Bryan K. RICHARDSON, Respondent,**

v.

**Traycie SHERWOOD, State of Missouri, Department of Corrections, Div. of Probation, Appellant.**

No. WD 70674.

Missouri Court of Appeals,
Western District.

Feb. 15, 2011.

As Modified March 29, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 2011.

Application for Transfer Denied
May 31, 2011.

**60**

Peggy Ann Whipple, Jefferson City, MO, for appellant.

Mark J. Murphy, Liberty, MO, for respondent.

Before Division Three: JAMES M. SMART, JR., P.J., JOSEPH M. ELLIS and GARY D. WITT, JJ.

JAMES M. SMART, JR., Judge.

Traycie Sherwood, a probation officer with the Missouri Board of Probation and Parole, appeals the judgment of the Circuit Court of Clay County determining that she tortiously interfered with the employment relationship of one of the probationers she supervised, Bryan K. Richardson, by informing Richardson's employer that Richardson was then using drugs. Mr. Richardson contended that the information communicated was false. He also contended that the communication of the information, even if not false, was a violation of her statutory duty not to disclose confidential information. Defendant–Appellant contends that the court erred in rejecting her affirmative defenses of official immunity and qualified privilege. We affirm.

## Procedural Background Summary

Bryan Richardson originally brought claims of intentional slander and tortious interference with a business relationship. He pleaded that Traycie Sherwood had defamed him and had tortiously interfered with his employment relationship in February 2007 by illegitimately informing his employer, Central Freight Lines, that he had admitted using illegal drugs. Defendant pleaded as affirmative defenses, *inter alia*, that any statements made by defendant were qualifiedly privileged, in that she had an interest in making or duty to make the communication, and that defendant is protected from liability and suit by the doctrine of official immunity.

Plaintiff dismissed his claim of slander before trial, leaving the claim of tortious interference, which proceeded to jury trial in October of 2008. Plaintiff presented evidence that Defendant Sherwood tortiously interfered by falsely reporting that Plaintiff was using drugs. Plaintiff also contended that Defendant Sherwood tortiously interfered with his employment by, *inter alia*, violating a statutory duty of confidentiality enacted into law as section 559.125.2, RSMo, prohibiting probation officers from disclosing confidential information to anyone other than specifically authorized persons. He also presented evidence that Defendant Sherwood violated her Department's Policy and Procedure Manual and its Code of Conduct in that respect.

Defendant moved for a directed verdict on grounds of official immunity and qualified privilege. The court denied those motions, and the claim of tortious interference was submitted. The jury was provided a verdict director hypothesizing that Plaintiff had a business relationship with his employer; that Defendant knew of such relationship; that Defendant "caused [the employer] to terminate its business relationship with Plaintiff;" and that Defendant did so "intentionally and without justification or excuse," thereby causing

damage to Plaintiff. Defendant Sherwood did not object to the verdict director proposed by Plaintiff. Defendant Sherwood requested jury instructions on official immunity and qualified privilege. The court denied Defendant's requests for instructions on those two purported defenses. The jury awarded Plaintiff a judgment for damages for tortious interference. Defendant Sherwood appeals.

## Factual Background and Evidentiary Summary

In 2005 and 2006, Bryan Richardson pleaded guilty to two separate drug offenses in Wyandotte County, Kansas. He was placed on probation and allowed to live in Missouri. The supervision of his probation was transferred to Missouri in late 2006. His case was assigned to Traycie Sherwood. As a probation officer, Defendant Sherwood supervised probationers and parolees in relation to the conditions of their probation or parole. In that position, Defendant Sherwood had authority and discretion to recommend the revocation of probation when there has been a failure by the probationer or parolee to abide by the conditions of probation or parole.

Plaintiff Richardson reported to Defendant Sherwood for his initial meeting with her on October 31, 2006. At that time, Plaintiff was employed as a line-haul driver for Central Freight Lines ("CFL"), which was unaware of Plaintiff's probationary status and unaware of any limitation on Plaintiff's travel rights. As a line-haul driver, Plaintiff Richardson transported freight to and from various locations, but mostly between Kansas City and Chicago and between Kansas City and Springdale, Arkansas. In accordance with the terms of his probation, Plaintiff was not authorized to travel a distance more than 100 miles from his home without a "travel permit" issued by the Board of Probation and Parole. The court in Kansas also had specified that Plaintiff Richardson was not to travel out of Missouri without a travel permit.

Plaintiff reported to his probation officer once a month. He also was scheduled for twice weekly drug counseling sessions. He was required to abstain from drugs, except those that had been prescribed by a doctor, and to maintain employment.

Plaintiff attended several drug counseling sessions with his substance abuse counselor, Loyd Goff, before he began missing sessions because he overslept or because he was on a trip to Chicago. Goff made arrangements for Plaintiff Richardson to go into in-patient drug treatment starting on March 9. In the meantime, Plaintiff Richardson appeared for his scheduled meeting with Defendant Sherwood on February 14. It is undisputed that at that meeting Defendant Sherwood confronted Plaintiff about drug usage. Plaintiff and Defendant disputed whether Plaintiff conceded at that meeting that he had been using crack cocaine; Plaintiff denied making any such concession.

Defendant Sherwood told Plaintiff she was going to revoke his travel permit and she wanted him to go into the in-patient drug treatment program. She wanted him to quit his job. Plaintiff insisted that he did not want to quit his job or lose it. He said he told her he would rather take a leave of absence if she wanted him in the in-patient drug treatment. Plaintiff testified that the conversation "got heated" and Defendant Sherwood told him that he was going to have to quit his job.

Plaintiff testified that his employer would have allowed him to take a leave of absence for in-patient drug treatment without losing his job. He testified that Defendant Sherwood also knew this but that she wanted him to quit his job.

Defendant Sherwood contacted the supervisor at CFL, Brian Woodfine, the terminal manager, and informed him that Plaintiff was on probation. Defendant told Woodfine that Plaintiff's travel permit was being revoked because he had admitted using drugs. Defendant also that same day faxed a letter to Plaintiff's employer informing the company in writing of the revocation of the travel permit and asserting her belief that Plaintiff was "a threat to public safety."

CFL suspended Plaintiff temporarily. Nine days later, CFL terminated Plaintiff's employment.

Defendant Sherwood acknowledged that the Board of Probation and Parole's stated policy on confidentiality specified that the probation officer should keep confidential any admission by the probationer of using drugs. Defendant testified, however, that she believed that in some circumstances public safety superseded the policy. Defendant testified that she did not believe that she was violating her duty as a probation and parole officer by disclosing to Plaintiff's employer that he was using drugs. She also admitted, however, that she had, in fact, violated the provisions of the Department's Policy and Procedure Manual (and the Department's Code of Conduct) that require her to keep such information confidential.

Following his termination, Plaintiff proceeded into the in-patient drug treatment program that had been arranged through the Board of Probation and Parole. He was in drug treatment for several weeks. After he completed that treatment, he began looking for another job. Since that time, Plaintiff has had other jobs with lower pay and fewer benefits than he would have enjoyed at CFL. Plaintiff filed suit against Sherwood for tortious interference with his employment, claiming that Defendant Sherwood falsely reported that he had been using drugs; and he claimed that, in any event, she was prohibited by law from disclosing such confidential information, and that she thereby caused him to lose his job. He asked for the difference between what he earned after being fired and what he would have earned if he had remained in employment at CFL. He also asked for punitive damages.

The evidence showed that Defendant Sherwood had been disciplined by the Regional Administrator of the Board of Probation and Parole for disclosing information about Plaintiff's drug use to his employer. Defendant's supervisor, Craig Ciafullo, testified that Defendant was permitted under the policy to tell Plaintiff's employer that Plaintiff was on probation and that she had revoked his travel permit. Mr. Ciafullo also testified that a probation and parole officer can require a probationer to quit his job if the officer deems it necessary to carry out the conditions of probation and parole. He said, however, that in his view Defendant Sherwood was not permitted to inform Plaintiff Richardson's employer that Plaintiff Richardson had used drugs. Mr. Ciafullo said that Defendant Sherwood's disclosure of Plaintiff's alleged drug usage was "out of bounds."

At the close of Plaintiff's case, Defendant moved for a directed verdict on the ground of official immunity and on the ground of qualified privilege. Defendant also unsuccessfully sought to have the court instruct the jury on official immunity and on qualified privilege. The court denied the motion for directed verdict and denied the requests for the instructions. At the conclusion of the trial, the jury returned a verdict for Plaintiff, awarding Plaintiff the amount of $74,045 for his damages for lost earnings. The jury declined to award punitive damages. Judgment was entered on the jury's verdict.

Defendant Sherwood preserved her contentions for appeal with a motion for JNOV and a motion for new trial, which were denied. Defendant now appeals.

## Discussion

Defendant Sherwood brings five points on appeal. Her first point is that the trial court erred in denying her motion for directed verdict and her motion for judgment notwithstanding the verdict (JNOV), because Defendant is a public officer who is authorized and directed to exercise discretion in carrying out of the duties of her office. Defendant says that she enjoys protection from liability by virtue of the doctrine of official immunity, because she was engaged in the discharge of her official duties at the time of her actions and that she acted in good faith. In her second point, she contends that the court erred in rejecting her instruction by which she wished to ask the jury to decide in her favor (on the basis of official immunity) unless they found her guilty of bad faith and malice.

## Official Immunity

■ Whether immunity applies is an issue of law to the extent that there is no essential dispute as to the operative facts. To the extent that the operative facts are disputed, however, the dispute may be resolved by the factfinder. *See Blue v. Harrah's N. Kansas City, LLC,* 170 S.W.3d 466, 480 (Mo.App.2005).

■ Official immunity "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington,* 263 S.W.3d 603, 610 (Mo. banc 2008). Official immunity is designed to "permit public employees to make judgments affecting public safety and welfare without concerns about possible personal liability." *Id.* at 611. It has been recognized as applicable to claims against police officers for false imprisonment, *Highfill v. Hale,* 186 S.W.3d 277 (Mo. banc 2006), and for assault, *DaVee v. Mathis,* 812 S.W.2d 816 (Mo.App.1991). It also has been held to protect a school superintendent against a claim for malicious prosecution. *Davis v. Bd. of Educ.,* 963 S.W.2d 679 (Mo.App. 1998).

■ The doctrine applies to officials whose actions were discretionary actions, requiring a measure of reason and judgment. *See Davis v. Lambert–St. Louis Int'l Airport,* 193 S.W.3d 760, 763 (Mo. banc 2006). A ministerial function, in contrast, is "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his/her own judgment or opinion concerning the propriety of the act to be performed." *Southers,* 263 S.W.3d at 610. Acts which are discretionary are protected, while acts which are ministerial are not; the court must determine whether the challenged act was discretionary or ministerial. *See Davis,* 193 S.W.3d at 763.

Defendant Sherwood asserts that she is a public official engaged in discretionary duties. She has no Missouri case directly on point. In 1926, the Missouri Supreme Court held that a county probation officer was a "public officer" for statutory salary purposes, but the issue in that case did not involve the matter of discretion. *See Hasting v. Jasper County,* 314 Mo. 144, 282 S.W. 700 (1926). No Missouri case we have found involves official immunity as to probation officers.

■ Defendant Sherwood is an employee of the Board of Probation and Parole within the Department of Corrections of the State of Missouri. It is clear that she

exercises discretionary authority as to many issues, such as whether to recommend revocation of probation and such as whether a probationer should quit an existing employment and seek employment elsewhere. Defendant Sherwood presented evidence intended to show that she had some degree of discretion to decide whether a public safety need trumped the confidentiality policy of the Board. Although we have no Missouri case on point, we believe it is clear that, as a general proposition, probation officers exercise the kind of discretion that could qualify them for the defense of official immunity. *See, e.g., Lambert v. Cartwright,* 160 N.C.App. 73, 584 S.E.2d 341, 344 (2003); *Britton v. Koep,* 470 N.W.2d 518, 523–24 (Minn.1991). *See also Rowe v. Carson,* 911 F.Supp. 389, 391 (D.Neb., 1996) (probation officer is entitled to qualified immunity as a public official).

Plaintiff argues that Defendant was not a public official because a public employee can be a public official only if she or he supervises others, and he suggests that there is no evidence here that Defendant supervised anyone. Plaintiff lacks persuasive authority for the proposition that the official immunity protects only managerial employees. In any event, Plaintiff forgets that Defendant's job involved supervising *probationers,* of which he was one. We find no basis to conclude that Defendant Sherwood was not a public official.

Defendant testified that she decided that public safety concerns warranted sharing the information about Plaintiff's drug use with his employer. She argues that this was a discretionary issue. She argues that Ciafullo's testimony that he would have handled it differently does not require a determination that Defendant's decision was not a matter of discretion; it reinforces the fact that it was a discretionary matter.

Plaintiff points out, correctly, that Defendant is not entitled to official immunity if she has acted with bad faith or malice. *See Blue,* 170 S.W.3d at 479. In any event, we do not believe this case presented the issues of good faith and lack of malice because, regardless of whether Defendant may have been in good faith in believing that Plaintiff presented a danger to the public, a Missouri statute removes any discretion that a probation officer might otherwise have had to make such a disclosure in such circumstances.

Defendant Sherwood completely fails to acknowledge and address a statute crucial to the analysis. The concept of good-faith exercise of discretion is relevant only when the public officer acts *within* the scope of legitimate, legally authorized discretion.

### Section 559.125

Section 559.125, which was invoked by Plaintiff in his petition and argued to the court at trial, removes any question about discretion. Section 559.125.2 states:

Information and data obtained by a probation or parole officer shall be privileged information and shall not be receivable in any court. Such information shall not be disclosed directly or indirectly to anyone other than the members of a parole board and the judge entitled to receive reports, except the court or the board may in its discretion permit the inspection of the report, or parts of such report, by the defendant, or offender or his attorney, or other person having a proper interest therein.

Defendant Sherwood entirely ignores the fact that the statute exists. For whatever reason, Plaintiff also fails to mention this statute to the court in this appeal, although he argued it at trial. It seems somewhat surreal that on appeal the parties ignore a legal provision that we see as

a substantial fulcrum on which the case turns. We believe the statute was the basis of many of the trial court rulings.

We see no argument that the statute does not mean exactly what it says, which is that "such information" shall not be disclosed to *anyone* other than the named individuals. This provision explains and justifies the trial court denial of the motion for directed verdict filed by Defendant, and why the court rejected Defendant's proposed instruction designed to ask the jury to decide the issue of bad faith and malice.

The purpose of the statute is that the probationer know that information learned by the probation officer will be held in confidence, subject only to specific exceptions. Information obtained by the probation officer is to be regarded as privileged information, and "*shall not be disclosed directly or indirectly to anyone* other than the members of a parole board and the judge entitled to receive such reports...." Section 559.125.2 (emphasis added).

The statute does not authorize discretion. Moreover, there is no argument that this case involved an emergency affecting public safety that could not be handled through the channels provided by statute. Defendant may have been in "good faith" in informing Plaintiff's employer, but if no discretion exists under the statute for such disclosure, it is difficult to find a basis for recognition of official immunity. Accordingly, Defendant was not entitled to the direction of a verdict in her favor, and she also was not entitled to a jury instruction submitting the issue of malice to the jury. Points I and II are denied.

### Instruction on Qualified Privilege

In her third point, Defendant Sherwood contends that the court erred in refusing to instruct the jury as to the doctrine of qualified privilege in relation to Defendant's statements made to Plaintiff's employer, in that she had a legitimate, protected duty to make the statements in question, and the employer had a legitimate interest in receiving the statements. At trial, Defendant proffered an instruction designed to submit to the jury the defense of qualified privilege:

Your verdict must be for the defendant if you believe:

Any statements defendant Sherwood made to plaintiff's employer were made in good faith, without actual malice, and defendant Sherwood had a legal, moral, or social duty to make those statements to protect the public, and plaintiff's employer had a legal, moral, or social interest in those statements.

■ Defendant Sherwood based the foregoing instruction on *Lonergan v. Love*, 235 Mo.App. 1066, 150 S.W.2d 534, 538 (1941), and *Dvorak v. O'Flynn*, 808 S.W.2d 912, 918 (Mo.App.1991). Those cases and others stand for the proposition that statements are protected when made in good faith, without actual malice, when there was a legal, moral, or social duty to make those statements and when the recipient of the statements had a legal, moral, or social interest in the statements. As mentioned in our analysis of the official immunity issue, however, Defendant was bound by law *not to disclose* privileged, confidential information. The statute takes no notice of whether the employer would have benefited from that information and would have had a legitimate interest in the information. The statute also takes no notice of whether the withholding of information from the employer could have jeopardized the public.

The statute allows probation officers to take action, even emergency action, of course, by immediate or prompt notification to the Board and to the supervising

judge as to the emergency issue, so that the court can take appropriate action. Moreover, the statute does not stop the probation officer from revoking a travel permit or requiring the probationer to quit a job that is significantly interfering with the probationer's progress, or to require the probationer to enter an in-patient drug treatment program when necessary. However, it would appear, by its specific terms, to prohibit what was done here. As we have noted, good faith and lack of actual malice are immaterial when a state statute specifically forbids the action that was taken. The court did not err in refusing to submit the jury instruction proffered by Defendant as to qualified privilege.

### Exclusion of Evidence of Suspension of License

Defendant Sherwood's fourth point relates to the trial court's ruling excluding from evidence certain aspects of the driving record of Plaintiff showing a suspension of his driving privileges. This evidence was offered solely on the issue of damages.

A trial court has broad discretion to admit or exclude evidence at trial, and this court will reverse only upon a showing of a clear abuse of that discretion. *See Mitchell v. Kardesch*, 313 S.W.3d 667, 674–75 (Mo. banc 2010). The record is not well developed as to the reason or reasons for the suspension and as to whether Plaintiff had within his power the ready ability to promptly repair the matters causing the suspension. He claimed damages because the subsequent employment did not pay as well as the CFL job had paid, but he was able to obtain various jobs involving driving. Defendant Sherwood presented no reason to believe that the temporary suspension of Plaintiff's license was the cause, or was a factor in causing,

Plaintiff to be unable to obtain other jobs of the same quality as the job with CFL. Thus, it was not clear that the evidence would have shown that Plaintiff's damage claim was unduly inflated. We do not find an abuse of discretion in the trial court ruling. Point denied.

### Submissibility of Claim of Tortious Interference

Defendant Sherwood's fifth contention on appeal involves some overlap and analysis with the other points. In the fifth point, Defendant contends that the court erred in denying her motion for directed verdict and her motion for JNOV, because the evidence showed that Defendant was legally justified in making the comments she made to the employer and that, therefore, she was entitled to judgment as a matter of law on the claim for tortious interference.

In understanding Missouri law and the subject of tortious interference with an employment relationship, a key case is *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247 (Mo. banc 2006). It may be helpful to review that case in some detail.

In *Stehno*, plaintiff Mr. Stehno was employed by a company named Modis, a technology consulting company that provided temporary services to its clients. Modis provided temporary services to Amdocs, which in turn provided temporary services to Sprint Spectrum, L.P. ("Sprint"). The Sprint senior manager in the relevant department at that time, Ms. Richert, was familiar with Stehno from a prior work experience. She had formed the opinion that Stehno was "high maintenance" and "a magnet for conflict." *Id.* at 249–50. Accordingly, when Ms. Richert learned that Stehno, among others, was working on the project in question, Ms. Richert expressed her concerns about Stehno to Stehno's supervisors at Amdocs. She said that because of her previous experiences

with Stehno, she did not recommend him for the project. She said, however, that because he had already been on site for four days, she would leave to Amdocs the decision as to whether to terminate him from the project. *Id.* at 250. Amdocs then dismissed Stehno from the project. Because Modis had no other available assignment at that time for Stehno, he found himself unemployed.

Stehno sued Sprint and Amdocs for tortious interference with a business expectancy. After verdicts for the defendants, the trial court granted Stehno's motion for a new trial, finding that the verdict was against the weight of the evidence. Sprint argued on appeal of that ruling that the court erred in granting Stehno a new trial. *Id.*

In setting forth the standard of review as to the grant of a new trial on grounds of the weight of the evidence, the Missouri Supreme Court recognized the appellant's difficult burden of showing a "manifest abuse" of discretion. *Id.* The Court next considered the elements of tortious interference, including the element of valid business expectancy. The Court in *Stehno* held, for reasons we need not delineate here, that plaintiff Stehno did not have a valid and reasonable business expectancy. *Id.* at 251–52.

While here no issue has been raised as to valid business expectancy, the *Stehno* case is significant for other reasons relevant to this appeal. In *Stehno,* the Court went on to address in *dictum* the element of "absence of justification."

In discussing the element of absence of justification, the Court specified that the plaintiff must show that the defendant employed "improper means" in seeking to further the defendant's own interests. *Id.* at 252. "Improper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of

trade, or any other wrongful act recognized by statute or the common law." *Id.*; *see also* Prosser, Law of Torts, section 129 at 936–37 (4th ed.1971). Defamation would qualify as improper means. We have reason to believe that violation of a statutory duty of confidentiality would also constitute "improper means." Defendant presents no argument or authority to the contrary.

Satisfying the element of lack of justification also requires, the Court said, a showing that the defendant interfered with the business expectancy for "personal, as opposed to corporate [or, in this case, as opposed to public]" interests and as a result of "personal animus" toward the plaintiff. *See Stehno,* 186 S.W.3d at 253; *Eggleston v. Phillips,* 838 S.W.2d 80, 83 (Mo. App.1992); *Green v. Beagle–Chilcutt Painting Co., Inc.,* 726 S.W.2d 344, 352 (Mo.App.1987).

We conclude that the claim of tortious interference was submissible in this case. The jury did not have to believe that Defendant Sherwood's actions were grounded in concerns about public safety as opposed to arising from personal animus. The court did not err in denying a directed verdict to Defendant Sherwood on Plaintiff's claim of tortious interference.

### Conclusion

The court did not err in denying the motions for directed verdict. The court also did not err in rejecting Defendant Sherwood's proffered instructions on official immunity and qualified privilege. The court did not abuse its discretion in its ruling as to the evidence of the temporary suspension. We affirm the judgment.

All concur.