James BARONE, Appellant,

v.

UNITED INDUSTRIES CORPO-
RATION, d/b/a Spectrum
Brands, Respondent.

No. ED 82564.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 5, 2004.

**26**

James J. Leightner, Gerard Diekman, Diekman & Leightner, Clayton, MO, for appellant.

Robert W. Stewart, Corey L. Franklin, McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, MO, for respondent.

GARY M. GAERTNER, SR., J.

Appellant, James Barone ("plaintiff"), appeals from the judgment of the Circuit Court of St. Louis County following a jury trial denying plaintiff's separate motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. Plaintiff brought suit against respondent, United Industries Corporation ("defendant"), for breach of contract, and the jury returned a verdict in favor of defendant. We affirm.

On February 18, 2000, defendant offered plaintiff employment as its Senior Vice President. Defendant's written offer of employment provided, *inter alia,* that plaintiff would be entitled to severance pay of one year's salary in the amount of three hundred thousand dollars if he was terminated without cause. Plaintiff accepted defendant's offer of employment and began his employment as defendant's Senior Vice President on March 6, 2000.

On September 1, 2000, Bob Caulk ("Caulk"), defendant's President, Chairman, and CEO, and Sherrie Senkfor ("Senkfor"), defendant's Vice President of Human Resources, notified plaintiff that he was terminated without cause. Caulk also informed plaintiff that from that day on, plaintiff would not have any work duties except to update Caulk on open business issues.

Defendant offered plaintiff two options for exiting the company. Pursuant to the first option, plaintiff would leave work immediately and collect the severance pay, of one year's salary in the amount of three hundred thousand dollars, that he was due pursuant to his initial offer of employment. Plaintiff ultimately accepted the second op-

tion. The second option provided that plaintiff would sign a release agreement, receive severance pay of one year's salary in the amount of three hundred thousand dollars, and be permitted to use his title of Senior Vice President and company office space for sixty days to assist in his search for new employment.

Defendant's in-house counsel Matthew McCarthy ("McCarthy") prepared a release agreement in conjunction with plaintiff's chosen exit plan. The release agreement confirmed that plaintiff's termination occurred on September 1, 2000 and that following that day plaintiff would only perform special projects assigned to him by Caulk. The release agreement also provided that defendant would receive severance pay of one year's salary in the amount of three hundred thousand dollars

> payable in twelve (12) equal consecutive monthly installments of [t]wenty-five [t]housand and 00/100 [d]ollars ($25,-000.00) each ... beginning on the next monthly payroll cycle after the [e]ffective [d]ate of the [r]elease as defined in ... paragraph 7.

Paragraph seven of the release agreement stated, in relevant part:

> [I]f you sign and return this [r]elease document within 21 days after receiving it, and if you do not thereafter revoke your acceptance during the following 7 days, then the [severance] payments [of twelve equal consecutive monthly installments of twenty five thousand dollars each] will be made. The [e]ffective [d]ate of this [r]elease will be the date on which the revocation period ends.

Plaintiff and McCarthy signed the release agreement on October 10, 2000. Pursuant to paragraph seven of the release agreement, the effective date of the agreement was October 17, 2000 and plaintiff was to begin receiving severance pay-

ments on November 30, 2000, the date of the next monthly payroll cycle.

In December 2000, McCarthy realized defendant had inadvertently paid plaintiff twenty five thousand dollars two times, on September 30, 2000 and October 31, 2000, during the interim period between plaintiff's September 1, 2000 termination and November 30, 2000, the date plaintiff should have begun receiving his severance payments. According to defendant, this payment mistake had occurred because while McCarthy prepared and signed the release agreement which provided that plaintiff would begin receiving severance payments on November 30, 2000, Senkfor mistakenly believed plaintiff's severance was to be paid beginning on September 30, 2000, the date of the monthly payroll cycle immediately following plaintiff's September 1, 2000 termination. Once Senkfor realized this error, she instructed defendant's payroll department to only issue severance payments to plaintiff until August 2001 to insure plaintiff would only receive twelve months pay.

After his September 1, 2000 termination, plaintiff was given office space to assist in his search for a new job. Plaintiff's only work duties, preparing a one-page memorandum and attending one forty-five minute meeting with Caulk, were limited to briefing Caulk on ongoing business issues. From September 1, 2000 to August 2001, plaintiff received twelve monthly payments of twenty five thousand dollars, or a total of three hundred thousand dollars. Plaintiff received ten of these twelve monthly payments after November 2000.

In October 2001, plaintiff filed suit against defendant for breach of written contract. Plaintiff alleged, *inter alia*, that defendant failed to complete performance of the severance pay portion of the release agreement because defendant did not pay plaintiff the last two monthly installments

of twenty five thousand dollars each. Defendant brought a counterclaim against plaintiff for unjust enrichment,[1] claiming that plaintiff was wrongfully paid in September 2000 and October 2000. On November 19, 2002, a jury found in favor of defendant on plaintiff's breach of contract claim and in favor of plaintiff on defendant's unjust enrichment counterclaim. On November 20, 2002, the trial court entered judgment consistent with the jury's verdict. The trial court did not award damages to either side, but taxed costs to plaintiff. The trial court denied plaintiff's separate motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. This appeal followed.

■ In his first point on appeal, plaintiff asserts that the trial court erred in denying his motion for judgment notwithstanding the verdict on his claim for breach of contract because defendant failed to make a submissible defense and plaintiff was entitled to judgment as a matter of law.

In order for a motion for judgment notwithstanding the verdict to be preserved for appeal, a sufficient motion for directed verdict must be made at the close of all the evidence. Rule 72.01(b)[2]; *Fust v. Francois*, 913 S.W.2d 38, 45 (Mo.App. E.D. 1995).

In this case, plaintiff's only reference to a motion for directed verdict was at the close of defendant's evidence. After the close of defendant's evidence, plaintiff introduced additional evidence. The record on appeal does not indicate that plaintiff made another reference to a motion for directed verdict at the close of all the evidence.

Therefore, plaintiff's first point on appeal is not preserved for appellate review.

It is within an appellate courts discretion to decide whether to review an unpreserved matter for plain error. Rule 84.13(c). Thus, in the exercise of our discretion, we decline to grant such review in this case because we find no manifest injustice has resulted.

■ In his second point on appeal, plaintiff argues that the trial court erred in denying his motion for judgment notwithstanding the verdict, or in the alternative, for a new trial on his claim for breach of contract by permitting the introduction of parol evidence.[3]

As a preliminary matter, defendant argues that plaintiff's second point on appeal is not preserved for appellate review because plaintiff failed to object when the evidence was introduced at trial. We agree.

■ To preserve a challenge to the introduction of parol evidence in a jury trial, there must be a timely objection to the receipt of the evidence at trial. *Fox v. Burton*, 402 S.W.2d 329, 335 (Mo.1966). A motion in limine, in and of itself, preserves nothing for appellate review. *Hancock v. Shook*, 100 S.W.3d 786, 802 (Mo.banc 2003).

In the instant case, plaintiff filed a motion in limine, which *inter alia*, requested the trial court exclude parol evidence. The trial court granted plaintiffs motion in limine in part, ruling that "no evidence is permitted to explain or modify the con-

---

**1.** Defendant initially filed several counterclaims. However, defendant's unjust enrichment counterclaim was the only counterclaim that remained at the time of the trial.

**2.** All rule references are to Mo.R.Civ.P.2003, unless otherwise indicated.

**3.** Plaintiff's second and third points on appeal do not have the same preservation issues as plaintiff's first point on appeal because these alleged errors are stated in plaintiff's alternative motion for a new trial.

tract on which the suit is brought." Plaintiff contends that the trial court then permitted the introduction of parol evidence to explain the release agreement when it allowed portions of Senkfors deposition to be read at trial and certain testimony by Caulk and McCarthy over plaintiffs objection.

At trial, plaintiff did not specifically make parol evidence objections when the trial court received certain parts of Senkfor's deposition, Caulk's testimony, or McCarthy's testimony as evidence at trial. However, plaintiff did make other various objections to the admission of this evidence. With regard to Senkfor, plaintiff did object that different parts of her testimony in her deposition were "hearsay," "irrelevant," "interpretations of her impression and understanding," "her understanding of the meeting, her understanding of [Caulks] intentions hearsay." Plaintiffs stated objection to Caulk's testimony was "[the] document speaks for itself." In addition, plaintiff objected that McCarthy's testimony was "irrelevant." Therefore, we find that plaintiff's objections at trial were not sufficient to preserve his parol evidence arguments for appeal.

▮ However, assuming *arguendo* that plaintiff's parol evidence arguments were preserved, we find the trial court still did not err in denying his motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. Plaintiff argues that the trial court erred in denying his motion for judgment notwithstanding the verdict, or in the alternative, for a new trial on his claim for breach of contract by receiving parol evidence to explain portions of the release agreement. Plaintiff contends portions of Senkfor's deposition read at trial and certain testimony by Caulk and McCarthy are inadmissible parol evidence.

▮ The parol evidence rule prohibits a trier of fact from using evidence of prior or contemporaneous oral agreements that varies or contradicts the terms of an unambiguous, final, and complete written contract unless there is fraud, accident, mistake, or duress. *Jake C. Byers, Inc. v. J.B.C. Investments*, 834 S.W.2d 806, 811 (Mo.App. E.D.1992). A written contract that appears to be a complete agreement on its face is presumed to be a final and complete agreement between the parties. *Id.* at 812. Therefore, only when a written contract appears to be an incomplete agreement on its face may extrinsic evidence be admitted to show the final and complete agreement between the parties. *Id.* However, the parol evidence rule does not apply to extrinsic evidence that does not contradict the actual terms of a complete and final agreement. *Gibson v. Harl*, 857 S.W.2d 260, 270 (Mo.App. W.D. 1993).

In the instant case, neither party contends that the release agreement is not a complete agreement on its face. Further, the terms of the release agreement provided the release was a "full, final and complete settlement and discharge of all [c]laims." Thus, the release agreement was the final and complete agreement between plaintiff and defendant.

Plaintiff contends Senkfor's testimony from pages 32, 60, 24–26, 35, and 41–42 of her deposition allegedly read at trial are inadmissible parol evidence. With regard to page 32 of Senkfor's deposition, plaintiff's objection to this evidence was sustained and this testimony was not allowed to be read at trial. In addition, defendant did not attempt to enter into evidence page 60 of Senkfor's deposition and this testimony was not read at trial. Therefore, Senkfor's testimony from pages 32 and 60 of her deposition are not at issue in this case.

In contrast, Senkfor's testimony from pages 24–26, 35, and 41–42 of her deposition were read at trial.

In Senkfor's deposition on pages 24–26, Senkfor testified that during the September 1, 2000 meeting, plaintiff asked Caulk if his severance pay would be for twelve or fourteen months, and that Caulk told plaintiff that he would only receive twelve months of severance pay. This evidence does not contradict the terms of the release agreement. Rather, this evidence is consistent with the release agreement's provision for twelve months of severance pay.

In Senkfor's deposition on page 35, Senkfor testified that after the September 1, 2000 she understood that both exit options included plaintiff getting twelve months of severance pay. Again, this evidence does not contradict the terms of the release agreement, but is consistent with the release agreement's provision for twelve months of severance pay.

In Senkfor's deposition on pages 41–42, Senkfor testified regarding follow up meetings she had with plaintiff. Plaintiff contends Senkfor testified as to how "those follow-up meetings affected or described the issues of what the severance pay was to be pursuant to the terms of the agreement." However, the only testimony relevant to the issue of severance pay was Senkfor's testimony that plaintiff said he wanted to make sure that his severance would be paid if the company was sold and that Caulk, in response, told plaintiff he would be signing a standard release form.

Therefore, the trial court did not err in admitting portions of Senkfor's testimony because the admitted portions do not contradict the terms of the release agreement, and, as such, does not constitute parol evidence.

Plaintiff also argues that certain testimony by Caulk and McCarthy are inadmissible parol evidence. McCarthy testified that in December of 2000 during a telephone conversation with plaintiff he first learned plaintiff was paid in September and October. However, McCarthy's testimony as to this knowledge does not contradict the terms of the release agreement and therefore, does not constitute inadmissible parol evidence.

Plaintiff devotes two sentences of his brief to his argument with respect to Caulk's testimony. Plaintiff argues Caulk testified as to his thought process regarding the agreement and when plaintiff would begin receiving his severance payments. In the testimony plaintiff cites, Caulk states that he would abide by the terms of the agreement including a severance agreement of "three hundred thousand a year—for twelve months pay." This statement was not contradictory to the agreement.

Therefore, the trial court did not err in denying plaintiff's motion for judgment notwithstanding the verdict, or in the alternative, for a new trial on his claim for breach of contract by permitting the introduction of parol evidence because the evidence did not contradict the parties' release agreement and thus did not violate the parol evidence rule. Point denied.

■ In his third point on appeal, plaintiff argues that the trial court erred in denying his motion for judgment notwithstanding the verdict, or in the alternative, for a new trial on his claim for breach of contract by admitting testimony on matters covered by the attorney-client privilege after denying plaintiff the opportunity to conduct discovery on the same matters.

■ Pursuant to section 491.060(3), RSMo 2000, an attorney is rendered incompetent to testify regarding "any com-

munication made to him by his client in that relation, or his advice thereon, without the consent of such client." The attorney-client privilege attaches to communications between a corporation's counsel and top management. *DeLaporte v. Robey Bldg. Supply, Inc.,* 812 S.W.2d 526, 531 (Mo.App. E.D.1991). The attorney-client privilege is waived when the client places the subject matter of the privileged communication in issue. *Sappington v. Miller,* 821 S.W.2d 901, 904 (Mo.App. W.D.1992).

Plaintiff contends that Caulk testified that he and defendant's in-house counsel, McCarthy, had discussions regarding the release agreement and that Caulk further testified that defendant's September and October 2000 payments to plaintiff were a mistake attributed to McCarthy. During the discovery phase of litigation, plaintiff had filed a motion to compel to discover communications between Caulk and McCarthy regarding this mistake. The trial court denied plaintiff's motion to compel.

The record reflects that the testimony in question was elicited by plaintiff's counsel on cross-examination of Caulk. While Caulk did testify that he had "limited" discussions with McCarthy regarding the release agreement, Caulk did not attribute defendant's September and October 2000 payments to plaintiff to a mistake made by McCarthy. Rather, Caulk merely testified that the payments were inadvertently made.

Caulk was employed as defendant's President, Chairman and CEO. Consequently, Caulk was top management and communications between him and McCarthy concerning the release agreement were covered by the attorney-client privilege. Caulk did not waive this attorney-client privilege because he did not testify as to the subject matter of his communications with McCarthy.

Therefore, the trial court did not err in denying plaintiff's motion for judgment notwithstanding the verdict, or in the alternative, for a new trial on his claim for breach of contract by admitting Caulk's testimony or denying plaintiff the opportunity to conduct discovery on communications between Caulk and McCarthy that were covered by the attorney-client privilege. Point denied.

Based on the foregoing, we affirm the judgment of the trial court.

GEORGE W. DRAPER III, C.J. and SHERRI B. SULLIVAN, J., concur.