

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

REYNA HOTEL CORPORATION, )
ET AL., )
  )
    Respondents, )
  )
v. ) WD86858
  )
LOTUS HOSPITALITY ) Opinion filed:  April 29, 2025
MANAGEMENT, LLC, ET AL., )
  )
    Appellants. )

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
THE HONORABLE SARAH A. CASTLE, JUDGE**

Division Three:  Edward R. Ardini, Jr., Presiding Judge,
Alok Ahuja, Judge and Thomas N. Chapman, Judge

In April 2021, the mayor of Kansas City, Missouri announced an initiative to relocate the homeless individuals camping on the lawn of City Hall to hotels paid for by Kansas City ("the City"). The City engaged Hope Faith Ministries ("Hope Faith")—a non-profit organization—to implement and manage the program. Two hotels that initially participated in the program are plaintiffs in this action: North Kansas City Hotel Corporation ("Econo Lodge") and Reyna Hotel Corporation ("Best Western") (collectively, "Plaintiff Hotels"). Plaintiff Hotels and Hope Faith agreed that Plaintiff

Hotels would accommodate homeless individuals for 90 days at a rate of $100 per night per room. Thereafter, Hope Faith terminated its role in the program and the City engaged Defendants Mihir Patel ("Patel"), Lotus Hospitality Management, LLC, and Lotus Care House (collectively, "Defendants") to manage the program. Plaintiff Hotels were then removed from the program and the homeless individuals staying at Plaintiff Hotels were moved to other locations. Plaintiff Hotels submitted invoices for the rooms they had provided while participating in the program. The City transferred money to Lotus Hospitality Management, LLC, and Lotus Care House (collectively, "Lotus") to pay the invoices; Lotus refused to pay Plaintiff Hotels until they signed a release, which Plaintiff Hotels would not do.

Plaintiff Hotels initiated this action against Defendants, asserting claims of tortious interference with a business expectancy and conversion. A jury found in favor of Plaintiff Hotels and awarded them actual and punitive damages. The Circuit Court of Jackson County ("the trial court") entered judgment on the jury's verdicts.

Defendants appeal, asserting nine points of trial court error. In five of their points, they claim the trial court erred in denying their motions for directed verdict. We find no merit to these claims. In four of their points, they claim the trial court committed instructional error. We find merit to one of these claims; specifically, that the trial court erred in refusing to submit to the jury Defendants' proffered agency affirmative defense instructions relating to the claim of tortious interference. For this reason, we reverse the trial court's judgment in favor of Plaintiff Hotels on their tortious interference claim and

2

remand for a new trial on that claim. In all other respects, the trial court's judgment is affirmed.

## Factual and Procedural Background[1]

In spring of 2021, homeless individuals started an encampment on the lawn of City Hall. On April 8, 2021, the mayor announced the City would pay for 500 hotel rooms for homeless individuals for 90 days, and would relocate the individuals on the lawn to the hotels. The City was not prepared to implement this initiative. After the mayor made the announcement, the City reached out to Hope Faith and asked it to relocate individuals from the City Hall lawn that day, find hotels to participate in the program, and negotiate with the hotels to house the individuals for 90 days. Hope Faith agreed to do so. Hope Faith loaded individuals onto buses and started calling nearby hotels.

The programs director at Hope Faith ("Programs Director") contacted Econo Lodge and spoke to Hiral Bhakta ("Bhakta"). Bhakta owns Plaintiff Hotels, and was initially a plaintiff in this action. Bhakta agreed to provide rooms at Plaintiff Hotels, and homeless individuals were immediately transported there. Bhakta initially made 25 of the 89 rooms at Econo Lodge available, as there were other guests staying at the hotel. However, he made arrangements within days to have all 89 rooms at Econo Lodge available for the program. Occupants "trickled" in and after four or five days, Econo Lodge was full. On April 13th, Bhakta and Programs Director agreed that Econo Lodge would provide 89 rooms and Best Western would provide 10 rooms for 90 days at the rate of $100 per night.

---

[1] We state these facts in the light most favorable to the jury's verdicts. *See Wynn v. BNSF Ry. Co.*, 588 S.W.3d 907, 909 n.2 (Mo. App. W.D. 2019).

3

The $100 rate was to "bake in the damages" that the homeless individuals were causing to Plaintiff Hotels, and due to amenities and services Plaintiff Hotels were providing, such as breakfast and allowing guests to use the laundry facilities. Bhakta set up "a direct bill account with the city."

On April 15th, Hope Faith decided that managing the City's initiative was "beyond [its] mission," and terminated its role in the program. The City then engaged Defendants to manage the program. Patel is a hotel developer. Lotus Hospitality Management is a limited liability company that provides hotel and hospitality management services; Patel is a member/manager and is "in charge." Lotus Care House is a non-profit organization formed by Patel; he is a director.

Defendants decided to implement a request for proposals ("RFP"): any hotel that wished to participate in the City's program was required to submit a proposal for consideration. Bhakta submitted a proposal. Bhakta learned his proposal was rejected on April 27th, when an Econo Lodge employee called Bhakta and informed him that the individuals staying at Econo Lodge were being removed, placed on buses, and relocated. That day, a flyer had been slipped under the room doors at Econo Lodge, which stated: "We (Econolodge Kansas City) are undergoing a change in room placement for this program. As of April 27, 2021 we are not able to provide room accommodations at this location. The hotel has decided not to provide accommodation through the continuing program." The flyer was on Lotus Care House letterhead. An Econo Lodge employee saw the executive director of Lotus Care House—who had previously worked for Hope Faith

4

and who had visited Econo Lodge throughout the program—slide the flyers under the doors of Econo Lodge guest rooms. Defendants denied creating or distributing the flyer.

Plaintiff Hotels submitted invoices for the rooms they had provided while participating in the program. The City transferred money to Lotus to pay the invoices. Lotus refused to pay Plaintiff Hotels until Bhakta signed a release. The release required Bhakta to indemnify or hold harmless Lotus and the City for any losses, damages, or liabilities that Lotus or the City incurred related to the program up to that date, and barred Bhakta from making any future claims against Lotus or the City. The release was drafted by Defendants and their attorney after Plaintiff Hotels had been removed from the program. Bhakta refused to sign the release. In 2022, Lotus transferred the money (that had been paid by the City) from Lotus' operating account to Lotus' attorney's trust account. All hotels that participated in the program were paid except for Econo Lodge and Best Western.

Bhakta and Plaintiff Hotels initiated this action against Defendants, asserting claims of tortious interference with a business expectancy and conversion. The case proceeded to a jury trial. During trial, Defendants moved for directed verdict on the tortious interference and conversion claims. The trial court denied their motions. However, the trial court did find there was insufficient evidence to support Bhakta's claims and insufficient evidence to support the conversion claim against Patel, and directed the verdicts on those claims in Defendants' favor. Accordingly, the following claims were submitted to the jury:

- Plaintiff Hotels' claim of tortious interference with a business expectancy against all three Defendants.

- Plaintiff Hotels' claim of conversion against the Lotus defendants.

5

The jury found in favor of Plaintiff Hotels and awarded them actual and punitive damages. On the tortious interference claim, the jury assessed actual damages in the amount of $421,277 and punitive damages against Patel at $1,000,000, against Lotus Hospitality Management at $250,000, and against Lotus Care House at $150,000. On the conversion claim, the jury assessed actual damages in the amount of $186,040.68 and punitive damages against Lotus Hospitality Management at $250,000 and against Lotus Care House at $150,000. The trial court entered judgment on the jury's verdicts. Defendants filed a motion for judgment notwithstanding the verdict or, alternatively, for a new trial. That motion was denied.

Defendants appeal, asserting five points related to the denials of their motions for directed verdict and four points related to instructional error.

**Points 1 – 5: Denial of Defendants' Motions for Directed Verdict**

In Points 1, 2, and 3, Defendants assert the trial court erred in denying their motion for directed verdict on Plaintiff Hotels' tortious interference claim. In Points 4 and 5, Defendants assert the trial court erred in denying their motion for directed verdict on Plaintiff Hotels' conversion claim.

*Standard of Review*

When reviewing the denial of a motion for directed verdict, we "must determine whether the plaintiff presented a submissible case by offering evidence to support every element necessary for liability." *Barron v. Abbott Laboratories, Inc.*, 529 S.W.3d 795, 799 (Mo. banc 2017). "Evidence is viewed in the light most favorable to the jury's verdict, giving the plaintiff all reasonable inferences and disregarding all conflicting evidence and

6

inferences." *Id.* "If the challenge is that an affirmative defense precludes recovery for the plaintiff, this Court must determine whether the moving party proved the affirmative defense as a matter of law." *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 95 (Mo. banc 2010). A motion for directed verdict should not "be granted unless there are no factual issues remaining for the jury to decide." *Id.*

*Preservation*

Although the parties did not raise this issue, we first address whether Defendants preserved their claims that the trial court erred in denying their motions for directed verdict.

Rule 72.01 governs motions for directed verdict. *Sanders v. Ahmed*, 364 S.W.3d 195, 206 (Mo. banc 2012). "Rule 72.01 requires that a motion for directed verdict 'state the specific grounds therefore.'" *Id.* at 208. "A party may move for directed verdict at the close of the opposing party's evidence, and/or at the close of all the evidence." *Walsh v. City of Kan.*, 481 S.W.3d 97, 112 (Mo. App. W.D. 2016) (citing Rule 72.01(a)-(b)). "In terms of preservation, a motion for directed verdict at the close of plaintiff's case is necessary only if the defendant seeks to have the case determined at that point without introduction of additional evidence." *Sanders*, 364 S.W.3d at 207. "[I]f defendant chooses to put on evidence," the "case then is decided on all of the evidence." *Id.* In that scenario, a motion for directed verdict at the close of all evidence is the "meaningful motion to preserve the issue" of submissibility, *id.*, and the "[f]ailure to move for a directed verdict at the close of all the evidence waives any contention that plaintiff failed to prove a submissible case," *Walsh*, 481 S.W.3d at 112.

7

Here, Defendants assert they moved for directed verdict "at the close of evidence," but the record does not support this assertion. Defendants moved for directed verdict on all claims at the close of Plaintiffs' evidence, and they moved for directed verdict on the conversion claim (but not the tortious interference claim) at the close of their own evidence.[2] Plaintiffs then presented rebuttal evidence, and Defendants did not move for directed verdict thereafter.[3] In short, the "close of evidence" was after Plaintiffs' rebuttal evidence, and Defendants did not move for directed verdict at that point. Accordingly, Defendants failed to preserve their claims that the trial court erred in denying their motions for directed verdict. *See Walsh*, 481 S.W.3d at 112-13; *Barone v. United Indus. Corp.*, 146 S.W.3d 25, 28 (Mo. App. E.D. 2004) (the plaintiff did not preserve his claim that the defendant failed to make a submissible defense: although the plaintiff moved for directed verdict after the defendant's evidence, the plaintiff then introduced additional evidence,

---

[2] There is no written motion for directed verdict in the record; it appears all motions were made orally and thus we rely on the trial transcript to discern the contents and timing of the motions. We note that—according to the transcript—after the trial court denied Plaintiff Hotels' and Defendants' respective motions for directed verdict on the conversion claim at the close of Defendants' evidence, it determined there was insufficient evidence to support the conversion claim against Patel, as well as insufficient evidence to support Bhakta's claims, and directed those verdicts in Defendants' favor.

[3] To the extent Defendants' counsel claimed at oral argument that after Plaintiffs' rebuttal evidence, Defendants referred back to their earlier directed verdict arguments, such claim is unsupported by the record. According to the trial transcript, Plaintiffs moved for directed verdict after their rebuttal evidence. After Plaintiffs' argument, the trial court asked Defendants: "Any response outside of your previous arguments?" and counsel responded, "not outside of our previous argument." Thus, defense counsel merely incorporated-by-reference his earlier arguments in response to Plaintiffs' motion for directed verdict; defense counsel did not renew Defendants' motion for directed verdict or argue in support of a directed verdict in Defendants' favor.

and "the record on appeal [did] not indicate that plaintiff made another reference to a motion for directed verdict at the close of all the evidence").

Although Defendants' claims asserted in Points 1-5 are not preserved, we exercise our discretion to review the merits of Points 1, 2, and 3, given that we are remanding for a new trial on the tortious interference claim and some of these issues may arise again on remand. We do not address Points 4 and 5 relating to the conversion claim. *See Walsh*, 481 S.W.3d at 113 (refusing to consider claim on appeal that the plaintiff did not make a submissible case for punitive damages where the appellant failed to raise the issue in a motion for directed verdict at the close of all evidence).

*Point 1 – Tortious Interference / Section 432.070*

In their first point, Defendants assert the trial court erred in denying their motion for directed verdict on Plaintiff Hotels' claim for tortious interference with a business expectancy.

The elements of a claim for tortious interference with a business expectancy are: (1) a contract or valid business expectancy; (2) the defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from the defendant's conduct. *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 19 (Mo. banc 2012).

The argument raised in this point relates to the first element: the existence of a contract or valid business expectancy. Defendants assert: section 432.070, RSMo,[4] requires any contract with a municipality be in writing; Plaintiff Hotels' contract with the City was not in writing; the contract thus did not comply with section 432.070; and, as a result, the contract between Plaintiff Hotels and the City was void *ab initio*. Defendants argue Plaintiff Hotels had "no valid business expectancy" that could be interfered with because their expectancy flowed from a void contract. We find, however, Defendants cannot rely on section 432.070 to avoid liability for Plaintiff Hotels' tortious interference claim.

Section 432.070 requires contracts with certain public entities—including municipalities—be in writing:

> No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, *shall be in writing and dated when made, and shall be subscribed by the parties thereto*, or their agents authorized by law and duly appointed and authorized in writing.

§ 432.070 (emphasis added).

The purpose of section 432.070 is to protect the public entity. *Gill Constr., Inc. v. 18th & Vine Auth.*, 157 S.W.3d 699, 708 (Mo. App. W.D. 2004). To that end, in defending against a claim for tortious interference with a business expectancy, a private party cannot raise or benefit from section 432.070 to avoid liability for the private party's tortious conduct. *See Rail Switching Servs. v. Marquis-Mo. Terminal, LLC*, 533 S.W.3d 245, 262

---

[4] All statutory references are to RSMo 2016 unless otherwise noted.

10

n.14 (Mo. App. E.D. 2017) (recognizing in a tortious interference case that the purpose of section 432.070 is to protect public entities and not defendants sued in their private capacities, and thus usually a non-public entity cannot raise or benefit from section 432.070)[5]; *Kantel Comm'ns, Inc. v. Casey*, 865 S.W.2d 685, 690-91 (Mo. App. W.D. 1993) (private defendant could not rely on section 432.070 to defend against plaintiff's tortious interference claims); *Casterline v. Stuerman* 588 S.W.2d 86, 88 (Mo. App. E.D. 1979) ("the defendants, sued in their private, individual capacities, can take no benefit from [section 432.070]. The purpose of the statute is to protect the county. It was not designed to insulate individuals from liability for their tortious acts." (internal citations omitted)).

Because Defendants cannot raise or benefit from section 432.070 to avoid liability for tortious interference, they were not entitled to a directed verdict on the ground that the contract was void under section 432.070.

Point denied.

---

[5] In *Rail Switching*, the plaintiff sued the defendant (a private entity) for tortious interference, alleging the defendant interfered with the plaintiff's contract with a public entity (the Port Authority). 533 S.W.3d at 249. Prior to the plaintiff filing suit, the Port Authority sought and received a declaratory judgment in a separate lawsuit that the contract was void under section 432.070 for lack of proper signatures. *Id.* at 252. The trial court in *Rail Switching* relied on that declaratory judgment, and found the defendant could not as a matter of law interfere with a void contract, and thus granted summary judgment for the defendant. *Id.* at 249, 253. In affirming the grant of summary judgment on appeal, the Eastern District noted that, while a non-public entity normally cannot raise or benefit from section 432.070, *Rail Switching* presented the unique situation where the invalidity of the contract "was recognized and resolved in a suit between the [public entity] and [the plaintiff], rather than raised first and litigated by the alleged tortfeasors." *Id.* at 262 n.14. Similarly, in *Rhodes Engineering Co. v. Public Water Supply District No. 1 of Holt County*, the municipal entity itself raised section 432.070 as a defense to a breach of contract claim, resulting in a finding that the asserted contract was void, independently of the claims of tortious interference against a third party. 128 S.W.3d 550, 560-62, 566 (Mo. App. W.D. 2004). The facts here do not present the same scenario: Defendants—not the City—are the first parties seeking to raise and litigate whether the City's contract was void under section 432.070.

*Point 2 – Tortious Interference / Agency*

In their second point, Defendants assert the trial court erred in denying their motion for directed verdict on Plaintiff Hotels' claim for tortious interference with a business expectancy, in that the undisputed evidence established that Defendants were agents of the City, and Missouri law does not recognize a cause of action for tortious interference with a business expectancy against an agent of a party to that expectancy. While we agree that an agent cannot be held liable for interfering with a contract or business expectancy to which its principal is a party, we do not agree that the evidence undisputedly established Defendants were agents of the City.

"[A]n action for tortious interference with a business expectancy will lie against a third party only." *Farrow v. St. Francis Med. Ctr.*, 407 S.W.3d 579, 602 (Mo. banc 2013); *Zipper v. Health Midwest*, 978 S.W.2d 398, 419 (Mo. App. W.D. 1998) ("an action for tortious interference with business expectancy will not lie against a party to the relationship with which interference is alleged"). "Where the individual being sued is an officer or agent of the defendant corporation, the officer or agent acting for the corporation is the corporation for purposes of tortious interference." *Farrow*, 407 S.W.3d at 602; *see also Halderman v. City of Sturgeon*, 670 S.W.3d 193, 207 (Mo. App. W.D. 2023) ("agents of a contracting entity are not strangers to the entity's contracts, but *are* 'the contracting party' in the relevant sense").

As a result, an agent cannot be held liable for tortiously interfering with a contract or business expectancy to which the agent's principal is a party. *See Farrow*, 407 S.W.3d at 602-03 (affirming summary judgment in favor of defendant doctor on the plaintiff's

12

claim of tortious interference with a business expectancy: the plaintiff alleged the doctor interfered with her business expectancy with the hospital, but the doctor was the hospital's agent, and thus the plaintiff's action could not "be maintained against Doctor"); *Halderman*, 670 S.W.3d at 208 (defendant city alderman could not be held liable for tortiously interfering with the plaintiff's contract with the city, as he was deemed an officer or agent of the city, and thus was not a third-party to that contract); *Zipper*, 978 S.W.2d at 419 (tortious interference claim against agents of medical corporation could not be sustained where the plaintiff premised his claim on an alleged business expectancy with the medical corporation).

Defendants argue that, in light of the above law, they were entitled to a directed verdict on Plaintiff Hotels' tortious interference claim because they were agents of the City. However, we find the characterization of Defendants' relationship with the City was a question for the jury.

"Two elements are required to establish an agency relationship: (1) the principal must consent, either expressly or impliedly, to the agent's acting on the principal's behalf, and (2) the agent must be subject to the principal's control." *Scott v. SSM Healthcare St. Louis*, 70 S.W.3d 560, 566 (Mo. App. E.D. 2002); *see also Cent. Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 323 (Mo. banc 2014) (For a principal-agent relationship to exist, the principal "must have the right to control the agent" (internal marks omitted)). "[A] jury question is presented when the evidence is sufficiently conflicting that reasonable minds could differ as to whether agency existed." *Scott*, 70 S.W.3d at 567; *see also Bargfrede v. Am. Income Life Ins. Co.*, 21 S.W.3d 157, 161 (Mo.

13

App. W.D. 2000) ("Generally, the relationship of principal-agent or employer-employee is a question of fact to be determined by the jury when, from the evidence adduced on the question, there may be a fair difference of opinion as to the existence of the relationship." (quoting *Johnson v. Bi-State Dev. Agency*, 793 S.W.2d 864, 867 (Mo. banc 1990))).

Here, a reasonable juror could have determined no agency relationship existed between Defendants and the City, as there was evidence that Defendants acted independently without being subject to the City's control. For example, there was evidence that Defendants decided to implement an RFP process to select the hotels that would participate in the program, Patel and "his team" determined the criteria for hotel participation in the program, and Patel and the executive director of Lotus Care House selected which hotels would be allowed in the program. Patel testified that the "RFP was within our company, meaning hotel staff and Lotus Care House staff." He also testified that, "being the head of the company and operations, [he] would be the ultimate decision maker" when it came to the RFP, and he "would make the final decision." Patel stated he had "full discretion," and the City "would not have said no." Finally, the assistant city manager testified that it was Patel's "RFP program, he could do with it as he wished."

In light of this evidence, we find the issue of agency was a question of fact for the jury. As a result, Defendants were not entitled to a directed verdict on the ground that they were agents of the City.

Point denied.

*Point 3 – Tortious Interference / Absence of Justification*

In their third point, Defendants assert the trial court erred in denying their motion for directed verdict on Plaintiff Hotels' claim for tortious interference with a business expectancy, in that Plaintiff Hotels failed to prove the "absence of justification" element of their claim.

To establish a tortious interference claim, the plaintiff must prove the defendant's interference with the plaintiff's expectancy was not justified. *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 252 (Mo. banc 2006) ("No liability arises for interfering with a business expectancy if the action complained of was an act which the defendant had a definite legal right to do without any qualification." (internal marks omitted)). However, even if a defendant has justification for interfering with a business expectancy, the defendant must not employ "improper means." *Id.* "Improper means are those that are independently wrongful," such as misrepresentation, trespass, and defamation. *Id.* Using improper means destroys any justification the defendant may have had for interfering. *Topper v. Midwest Div., Inc.*, 306 S.W.3d 117, 126 (Mo. App. W.D. 2010). The plaintiff has the burden to show lack of justification; thus, "[i]f the defendant has a legitimate interest, economic or otherwise, in the expectancy the plaintiff seeks to protect, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests." *Stehno*, 186 S.W.3d at 252.

Here, there was evidence that Defendants used improper means in interfering with Plaintiff Hotels' business expectancy. The jury could have determined from the evidence that Defendants placed flyers under the doors of Econo Lodge rooms, and these flyers

15

misrepresented to homeless individuals that Econo Lodge was forcing them to leave because Econo Lodge had decided to no longer participate in the City's program.

The jury also could have reasonably inferred from the evidence that Defendants removed Plaintiff Hotels from the program to further their own interests: Patel was a competing hotelier, Patel's hotels participated in the program, and Bhakta had complained to the City about Patel before Plaintiff Hotels were removed from the program.

Because there was evidence from which the jury could have found Defendants used improper means to further their own interests, and thus lacked justification for their interference, Defendants were not entitled to a directed verdict on Plaintiff Hotels' tortious interference claim.

Point denied.

## Points 6 – 9: Instructional Error

In Points 6, 7, 8, and 9, Defendants assert the trial court committed instructional error.

### *Standard of Review*

"Whether a jury was instructed properly is a question of law that this Court reviews *de novo*." *Kader v. Bd. of Regents of Harris-Stowe Univ.*, 565 S.W.3d 182, 186 (Mo. banc 2019). We similarly review *de novo* the trial court's "refusal to give a party's proffered instruction . . . , evaluating whether the instructions were supported by the evidence and the law." *Miller v. Norfolk S. Ry. Co.*, 591 S.W.3d 29, 38 (Mo. App. W.D. 2019). "This Court views the evidence in the light most favorable to submission of the instruction." *Kader*, 565 S.W.3d at 186. "The party challenging the instruction must show that the

16

offending instruction misdirected, misled, or confused the jury, resulting in prejudice to the party challenging the instruction." *Id.* "Instructional error requires reversal only if the error resulted in prejudice materially affecting the merits of the case." *Id.*

*Point 6 – Instructional Error / Agency Affirmative Defense*

In Point 6, Defendants assert the trial court erred in refusing their proffered affirmative defense instruction on agency. We agree.

In their answer to Plaintiffs' Second Amended Petition, Defendants raised as an affirmative defense that they were agents of the City and thus could not be held liable for tortious interference. At trial, Defendants proffered three instructions relating to their affirmative defense of agency, asserting all three instructions should be submitted to the jury for each defendant. First, Defendants proffered a verdict director for tortious interference that included a final sentence stating, "Unless you believe Plaintiffs are not entitled to recover by reason of Instruction No. __." Next, Defendants proffered an affirmative defense instruction stating, "Your verdict must be for [Defendant] if you believe that defendant was acting within the scope and course of agency with the City of Kansas City." Finally, Defendants proffered an instruction defining "scope and course of agency," which stated as follows:

> Acts were within the "scope and course of agency" as that phrase is used in this these [sic] instructions if:
>
> 1.  they were performed by [Defendant] to serve the interests of the city of Kansas City according to an express or implied agreement with the city of Kansas City, and
>
> 2.  the City of Kansas City either controlled or had the right to control the physical conduct of [Defendant].

17

This final instruction was modeled after Missouri Approved Instruction ("MAI") 13.06, titled "Scope of Agency—Servant or Independent Contractor." The trial court refused Defendants' instructions, determining the agency instruction "is specifically outlined in MAI only to be given in certain circumstances, which do not apply in this case." We find the trial court's refusal was erroneous because Defendants' agency instructions were in proper form and were supported by law and the evidence.

As explained above in our discussion of Point 2, if Defendants are agents of the City, they cannot be held liable for tortiously interfering with Plaintiff Hotels' business expectancy with the City. Thus, even if Plaintiff Hotels prove the allegations of their tortious interference claim, if Defendants are deemed to be agents of the City, Plaintiff Hotels cannot prevail. As a result, agency is an affirmative defense to Plaintiff Hotels' tortious interference claim. *See Varsalona v. Ortiz*, 445 S.W.3d 137, 140 (Mo. App. W.D. 2014) ("[A]n affirmative defense is a matter that is asserted to avoid liability, even if the facts pleaded in the petition are proved."). As such, the law supports instructing a jury on the affirmative defense of agency when this defense is properly raised against a tortious interference claim and supported by the evidence.

Plaintiff Hotels argue that Defendants' "suggestion MAI 13.06 should be modified to allow an affirmative defense on agency is misplaced because the definition of agency is to be used only when a defendant is charged with *respondeat superior* liability and there is a dispute that the alleged tortfeasor was not his servant," citing "MAI 13.06, note 2."[6]

---

[6] Note 2 of the Notes on Use to MAI 13.06 provides, "This definition is to be used only when defendant is charged with *respondeat superior* liability and there is a dispute that the alleged

18

Although Plaintiff Hotels do not further explain why MAI 13.06 does not apply here, to the extent they are claiming this instruction is only applicable when there are allegations of a master/servant relationship, that is incorrect. *See, e.g.*, *Parker v. Stern Bros. & Co.*, 499 S.W.2d 397, 408-09 (Mo. 1973) (affirming submission of jury instruction modeled after MAI 13.06 that required jury to determine if the acts were performed by an "agent" to serve the interests of a "principal"); *see also* MAI 13.01 para. G (MAI 13.06 applies to submit the issue of the relationship between the "master/principal/employer" and "alleged servant/agent/employee").

To the extent that Plaintiff Hotels are claiming the instruction is inapplicable because Defendants were not "charged with" vicarious liability, and instead Defendants are the ones asserting the existence of an agency relationship as a defense, we disagree. A tortious interference claim presents the—maybe rare—circumstance in which a defending party seeks to establish an agency relationship to *avoid* liability. But the fact that such a situation is perhaps uncommon does not remove the availability of the agency defense to a tortious interference claim. And when such a defense is submitted to the jury, "agency" must be defined. MAI 13.06 provides the definition. Even if the definition of "agency" contained in MAI 13.06 is not literally applicable in this unusual situation—where a defendant seeks to establish that it was acting in an agency capacity to escape liability—it was entirely appropriate for Defendants to pattern their affirmative defense instruction after

---

tortfeasor was not his servant. See MAI 13.04 and MAI 13.05 where there is no dispute as to the master-servant relationship."

the definition of "agency" found in MAI 13.06. *See Groves v. State Farm Mut. Auto. Ins. Co.*, 540 S.W.2d 39, 44 (Mo. banc 1976) (approving trial court's giving of an instruction patterned after an approved instruction "applicable to a suit on a life insurance policy" where "[t]here [was] no approved verdict directing instruction for use in a suit on an insurance policy for damage to the insured's automobile"). We thus find unavailing Plaintiff Hotels' argument that a definition of agency modeled after MAI 13.06 should not have been submitted to the jury.

Not only were Defendants' proffered agency affirmative defense instructions supported by Missouri law, but they were also supported by the evidence. "A defendant is entitled to a jury instruction on any theory that the evidence and reasonable inferences therefrom, viewed in the light most favorable to the submission of the instruction, tend to establish." *Northrop Grumman Guidance & Elecs. Co., Inc. v. Emps. Ins. Co. of Wausau*, 612 S.W.3d 1, 22 (Mo. App. W.D. 2020). "A defendant has a right to submit its defense to the jury if there is any fact or circumstance in evidence . . . tending to establish the defense." *Id.*

As we have explained in addressing Defendants' second point, there was evidence in the record which could support a finding that Defendants were *not* acting as agents for the City when they removed Plaintiff Hotels from the program. But there was also evidence that could support an agency finding, and the jury should have been instructed to decide the question. This evidence that could support an agency finding included testimony from the assistant city manager that Lotus Hospitality Management "work[ed] as the city's agent" and acted on behalf of the City, and testimony from Patel that the City requested

20

Defendants "administer the pay application as a fiscal agent." The jury also heard evidence that Patel would make recommendations to the City and "the City would decide how [it] wanted him to act," and Defendants "receive[d] direction from [the City] with how to proceed with particular items with respect to" the program. Patel testified that the City provided direction and guidance relating to the RFP, and the City "had the last say" on the release. Viewing the evidence in the light most favorable to submission, Defendants were entitled to have the jury instructed on their agency affirmative defense. *See Northrop Grumman Guidance & Elecs. Co.*, 612 S.W.3d at 22.

Finally, we find Defendants suffered prejudice from the trial court's erroneous refusal of their agency instructions, warranting reversal. Defendants argue—and we agree—that the trial court's refusal to instruct the jury on Defendants' affirmative defense materially affected the merits of the action: the affirmative defense was a complete defense to liability on the tortious interference claim.[7]

For these reasons, we find the trial court erred in refusing to instruct the jury on Defendants' agency affirmative defense, resulting in prejudice to Defendants. Point granted.

---

[7] Plaintiff Hotels assert Defendants failed to preserve this claim because their point relied on "does not contain language setting forth the proposition that the tendered instruction misdirected, misled, or confused the jury, or resulted in prejudice to [Defendants]." "[W]e note that the policy of the appellate courts in this State is to decide a case on the merits rather than technical deficiencies in the brief," and "[w]here—as here—we are able to discern the claims being made and the purportedly defective nature of the points relied on does not impede our disposition of the case on the merits, we will review the merits of a claim despite any claimed deficiencies in the appellant's Points." *Marcantonio v. Bd. of Curators Lincoln Univ.*, 702 S.W.3d 153, 167 (Mo. App. W.D. 2024) (internal marks omitted).

*Point 7 – Instructional Error / Tortious Interference*

In Point 7, Defendants assert the trial court erred in improperly instructing the jury on tortious interference. We disagree.[8]

The trial court submitted to the jury the following verdict director for each defendant on Plaintiff Hotels' tortious interference claim:

> Your verdict must be for [Plaintiff Hotels] against [defendant] on the claim of Tortious Interference of a Business Expectancy, if you believe:
>
> First, [Plaintiff Hotels] had a valid business expectancy with Hope Faith Ministries or the City of Kansas City, and
>
> Second, [defendant] knew of such business expectancy, and
>
> Third, [defendant] interfered with [Plaintiff Hotels'] business expectancy, and
>
> Fourth, [defendant] did so intentionally and without justification or excuse, and
>
> Fifth, [Plaintiff Hotels] were thereby damaged.

This instruction was modeled after MAI 23.11.

Defendants proffered the following instructions relating to tortious interference that were refused by the trial court: (1) a verdict director; (2) an instruction defining "valid expectancy"; (3) an affirmative defense instruction relating to Defendants' "economic interest" in the expectancy and an accompanying instruction defining "improper means." We address each one in turn.

---

[8] Consistent with our analysis in Point 6, however, the tortious interference verdict directors should have included a final sentence providing, "Unless you believe Plaintiffs are not entitled to recover by means of Instruction No. __." (referring to the agency affirmative defense instruction).

22

<u>(1) The verdict director</u>

Defendants challenge the first element of the verdict director submitted to the jury; specifically, the requirement that the jurors find Plaintiff Hotels had a valid business expectancy with either "Hope Faith Ministries or the City." But Defendants have not demonstrated instructional error. To the extent Defendants challenge the inclusion of Hope Faith in the first element, they cannot raise such a challenge given they also included Hope Faith in the first element of their proffered verdict director.[9] *See In re Care & Treatment of George*, 515 S.W.3d 791, 803 (Mo. App. W.D. 2017) ("having used the phrase in his own proposed instruction, [the appellant] cannot now claim that it was error for the phrase to be included in the jury instructions"). And the evidence supported instructing the jury on Plaintiff Hotels' business expectancy with the City. Although Defendants argue Plaintiff Hotels "could not have had a legitimate business expectancy" with the City "based upon a contract that was void *ab initio*," we rejected this argument in Point 1.

<u>(2) Definition of "valid business expectancy"</u>

Defendants argue on appeal that the trial court should have defined the term "valid business expectancy," asserting "[w]hile many jurors may understand the words 'valid,' 'business,' and 'expectancy' separately under their ordinary meaning, the term 'valid business expectancy' is a legal term which must be defined." We first note that Defendants

---

[9] The first element of Defendants' proffered verdict director states: "First, a valid business expectancy existed between Plaintiffs and Hope Faith Ministries which was interfered with by [Defendant]."

did not proffer a definitional instruction for the term "valid business expectancy"; instead, they proffered a definitional instruction for the term "valid expectancy," as follows:

> The phrase 'valid expectancy' as that phrase is used in this these [sic] instructions means that which is expected or hoped for but cannot be too indefinite or remote.

To that end, their challenge on appeal to the trial court's failure to define "valid business expectancy" is not preserved. Moreover, there is no MAI defining "valid business expectancy," and Defendants cite to no case in which a trial court defined "valid expectancy" or "valid business expectancy" for the jury relating to tortious interference. Finally, we find the term "valid business expectancy" can be readily understood by a juror without definition. *See Huelskamp v. Patients First Health Care, LLC*, 475 S.W.3d 162, 175 n.8 (Mo. App. E.D. 2014) ("jurors should be credited with ordinary intelligence, common sense, and an average understanding of the English language").

### (3) Affirmative defense instruction and definition of "improper means"

Defendants argue "Missouri law on tortious interference with a business expectancy provides [Defendants] with a defense if [they] had a legitimate interest in the expectancy sought to be protected and [they] did not use improper means." They assert the trial court erred in refusing their proffered "affirmative defense" instruction, which provided:

> Your verdict must be for [Defendant] if you believe that [Defendant] had an economic interest in the valid expectancy unless you believe that [Defendant] used improper means to further only [Defendant's interests].

Defendants also proffered an instruction defining "improper means":

> The phrase "improper means" as used in these instructions means threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade.

24

We find no error in the trial court's refusal of these instructions. The question of whether Defendants had an economic interest in the expectancy at issue was an element of Plaintiff Hotels' claim, upon which they had the burden of proof—it was not an affirmative defense for Defendants to raise. *See Stehno*, 186 S.W.3d at 252 ("The plaintiff carries the burden of affirmatively showing [the defendant's] lack of justification" in the interference, and if "the defendant has a legitimate interest, economic or otherwise, in the expectancy the plaintiff seeks to protect, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests."). The jury was properly instructed on the elements of a tortious interference claim—including the absence-of-justification element—consistent with MAI 23.11. And Defendants cite no case in which an "economic interest" defense instruction or definitional instruction for "improper means" was submitted to the jury.

For the above-stated reasons, Defendants have failed to establish their claim of instructional error. Point denied.

*Point 8 – Instructional Error / Conversion*

In Point 8, Defendants assert the trial court erred in improperly instructing the jury on conversion.

"Conversion is the unauthorized assumption of the right of ownership over personal property of another to the exclusion of the owner's rights." *Massood v. Fedynich*, 530 S.W.3d 49, 57 (Mo. App. W.D. 2017). Although conversion does not ordinarily lie for a claim for money, there is an exception for funds placed in the custody of another for a

25

specific purpose: the diversion of the funds "for other than such specified purpose subjects the holder to liability in conversion." *Dillard v. Payne*, 615 S.W.2d 53, 55 (Mo. 1981).

"Conversion requires proof of three elements: (1) the plaintiff owned the property or was entitled to possess it; (2) the defendant took possession of the property with the intent to exercise some control over it; and (3) the defendant thereby deprived the plaintiff of the right to possession." *Massood*, 530 S.W.3d at 57 (internal marks omitted).

The trial court submitted to the jury the following verdict director for each Lotus defendant on Plaintiff Hotels' conversion claim:

> Your verdict must be for [Plaintiff Hotels] against [defendant] on the claim of Conversion, if you believe:
>
> First, [Plaintiff Hotels] provided rooms at the Econo Lodge and the Best Western as part of the City of Kansas City's 90-day initiative to house houseless individuals in hotels and were thereby entitled to payment from the City of Kansas City for the rooms provided by [Plaintiff Hotels], and
>
> Second, [defendant] took possession of the payment from the City of Kansas City for the rooms provided by [Plaintiff Hotels] with the specific purpose of making payment to [Plaintiff Hotels], and
>
> Third, [defendant] thereby deprived [Plaintiff Hotels] of the right to possession of payment from the City of Kansas City by failing to make such payment.

This instruction was patterned after MAI 23.12(1) and was modified by the trial court to account for the claim being based on money instead of personal property. We find no instructional error.

"The test of a modified MAI is whether it follows the substantive law and can be readily understood by the jury." *Lewellen v. Universal Underwriters Ins. Co.*, 574 S.W.3d 251, 279 (Mo. App. W.D. 2019) (internal marks omitted). Here, the verdict director

26

followed the substantive law: it instructed the jury on the three elements required to prove a conversion claim, *see Massood*, 530 S.W.3d at 57; MAI 23.12(1), and also instructed the jury on the "specific purpose" requirement of conversion claims related to money, *see Dillard*, 615 S.W.2d at 55. We also find the verdict director could be readily understood by the jury. Defendants claim the verdict director misled "the jury into not even considering whether there was a release contingency." But the first paragraph required the jury to determine whether Plaintiff Hotels were entitled to payment, and the existence and effect of any "release contingency" were considerations subsumed within this determination. We thus find the verdict director adequately instructed the jury. *See* Rule 70.02(b) (When an MAI must be modified to fairly submit an issue in a particular case, then such modification "shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts.").

Point denied.

*Point 9 – Instructional Error / Punitive Damages*

In Point 9, Defendants assert the trial court erred in instructing the jury on punitive damages, in that the instructions given were inconsistent with section 510.261.1, "resulting in an incorrect statement of the law and wrongly instructing the jury as to the standard that must be found to award punitive damages."

The trial court submitted to the jury an instruction on punitive damages that was patterned after MAI 10.01. The instruction stated:

> If you find in favor of [Plaintiff Hotels] . . . and if you believe the conduct of [Defendants] . . . *was outrageous because of evil motive or reckless indifference to the rights of others*, then in addition to any damages to which

27

you may find Plaintiff entitled . . . you may award Plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish [Defendants] and others from like conduct.

(emphasis added). Section 510.261 went into effect on August 28, 2020, and provides: "Except as otherwise provided by statute, punitive damages shall not be awarded unless the claimant proves by clear and convincing evidence that the defendant *intentionally harmed the plaintiff without just cause or acted with a deliberate and flagrant disregard for the safety of others.*" § 510.261.1, RSMo Cum. Supp. 2020 (emphasis added).

At the instruction conference during trial, Defendants objected to the punitive damages instructions on the basis that the "language [was] inconsistent with" section 510.261.1. The trial court rejected Defendants' argument, relying on comments prepared by the Committee on Jury Instructions – Civil and approved by the Missouri Supreme Court, in which the Committee acknowledged section 510.261 "purport[ed] to effect changes to the law of punitive damages"[10] but took no position on the statute's impact on MAI 10.01.

Defendants assert MAI 10.01 no longer accurately states the law after the enactment of section 510.261, and, as a result, the punitive damages instructions submitted to the jury—that were patterned after MAI 10.01—"wrongly instruct[ed] the jury." However, we find Defendants have failed to carry their burden on appeal to establish the trial court

_____

[10] Other subsections of the statute address procedural requirements and limitations on punitive damages awards. The statute also provides that, "Except to the extent that they are expressly inconsistent with this section, all common law limitations on punitive damages and all limitations on the recovery of punitive damages contained in other sections of the laws of this state remain in full force and effect." § 510.261.8.

committed an instructional error that materially affected the merits of the action, as required to obtain reversal.

In their opening brief, Defendants simply state that a "significant difference" exists between the punitive damages standard in section 510.261.1 and the instructions provided to the jury, and thus Defendants suffered "prejudice which materially affected the merits of this case." They do not provide any analysis to support their claim. They do not explain how the standards are different, let alone "significant[ly]" different. And despite the voluminous case law discussing the language of MAI 10.01 and addressing the punitive damages standard therein, they do not cite a single piece of authority to support their argument.

Although Defendants elaborate on their argument in their reply brief by asserting "[t]he standards in the submitted instruction were lower than the standard required by statute," in that the standard in the instructions did not require the jury to find Defendants acted intentionally and "the proper statutory standard . . . now requires intent," they still do not provide any legal authority—or even a dictionary definition—to support their interpretation of the language in the jury instruction and section 510.261.1.[11] Nor do Defendants address or attempt to distinguish caselaw contrary to their position; i.e., cases indicating the standard for punitive damages in MAI 10.01 does, indeed, contemplate intentional conduct.[12]

---

[11] Defendants did not further elaborate on their punitive damages claim of instructional error at oral argument.

[12] For example, in *Burnett v. Griffith*, the Missouri Supreme Court adopted the instruction which

29

Defendants argue the trial court erred by giving an MAI instruction that was inconsistent with the substantive law, but in order to prevail on such a claim on appeal, Defendants must *prove* the instruction misstated the law. *See Koon v. Walden*, 539 S.W.3d 752, 769 (Mo. App. E.D. 2017) ("To require that the trial court give a non-MAI instruction, a party has to prove that the MAI instruction submitted to the jury misstates the law."). Rather than prove the punitive damages instructions submitted to the jury misstated the law, Defendants simply ask this Court to presume reversible error occurred based on their unsupported interpretation of the language in the instruction and section 510.261.1. As a result, we find Defendants have failed to carry their burden on appeal to establish reversible error. *See Brown v. Chipotle Servs., LLC*, 645 S.W.3d 518, 526 (Mo. App. W.D. 2022) ("We presume on appeal that a circuit court's decisions are correct, and it is appellant's burden to dislodge us from that presumption and establish reversible error." (internal marks omitted)); *see also Haynam v. Laclede Elec. Coop., Inc.*, 889 S.W.2d 148, 155 (Mo. App. S.D. 1994) (rejecting the appellant's argument that the punitive damages instruction submitted to the jury stated a standard "lower than required for submitting punitive

---

now appears as the current MAI 10.01, and in doing so, stated:

> Lest there be any confusion, in adopting the new instruction we do not overrule cases which have held that punitive damages require a willful, wanton or malicious culpable mental state. The definitional concepts of those terms are included in the new MAI 10.01.

769 S.W.2d 780, 789 (Mo. banc 1989); *cf. Rhoden v. Mo. Delta Med. Ctr.*, 621 S.W.3d 469, 481 (Mo. banc 2021) ("A submissible case for punitive damages requires clear and convincing proof that the defendant intentionally acted either by a wanton, willful or outrageous act, or reckless disregard for an act's consequences (from which evil motive is inferred)." (quoting *Howard v. City of Kan. City*, 332 S.W.3d 772, 788 (Mo. banc 2011) (internal marks omitted))).

damages," because the appellant "develop[ed] no argument to support its 'lower standard' assertion"); *cf. Bishop v. Metro Restoration Servs., Inc.*, 209 S.W.3d 43, 46 (Mo. App. S.D. 2006) ("Where an appellant fails to cite relevant authority or fails to explain why none is available, this Court is justified in considering the point abandoned . . . because were we to independently research and supply legal authority in support of Claimant's appeal, we would be acting as her advocate." (internal marks omitted)).

Point denied.

## Conclusion

For the reasons stated above, we reverse the trial court's judgment in favor of Plaintiff Hotels on their claim for tortious interference with a business expectancy and remand for a new trial on that claim. In all other respects, the trial court's judgment is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

31